130 P.3d 915 (2006)
132 Wash.App. 222
In re the MARRIAGE OF Cristen L. WATSON, Respondent, and
Christopher B. Watson, Appellant.
No. 31865-2-II.
Court of Appeals of Washington, Division 2.
March 28, 2006.
Dana L. Williams, Kenneth G. Johnson, Attorney at Law, Chehalis, WA, for Respondent.
*916 Stephen Thomas Carmick, Attorney at Law, Chehalis, WA, for Appellant.
HOUGHTON, J.
¶ 1 Christopher Watson appeals from court orders entered in an action to modify a parenting plan based on allegations of sexual abuse. Following a full evidentiary hearing, the court denied the modification petition but ordered an amended temporary parenting plan restricting his residential time to two hours of supervised visitation every other week. We hold that the trial court exceeded its authority and abused its discretion in limiting visitation after finding that the sexual abuse allegations were unproven. We reverse and remand for reinstatement of the original parenting plan.

FACTS
¶ 2 Cristen Boling (formerly Watson) and Watson dissolved their marriage on October 20, 2000. The divorce decree incorporated a final parenting plan for their daughter, M.R. (born August 26, 1997). Watson received standard visitation rights, including alternating weekends, Thursday evenings, and holiday and summer residential time. The parenting plan also mandated an alternative dispute resolution process and provided for mutual decisionmaking, except that Boling would have sole decision-making authority over M.R.'s religious upbringing.
¶ 3 In January 2001, when M.R. was three years, five months old, Boling took her to a therapist, Gregory Williams, PhD, to receive treatment for "visitation anxiety." M.R. continued to meet with Williams weekly from April 2001 on.
¶ 4 According to Boling, in June 2001, M.R. disclosed to her that Watson had put his finger in her anus. Boling told Williams about the disclosure, and the focus of M.R.'s therapy shifted from visitation anxiety to the alleged sexual abuse. During the course of her therapy, M.R. made two disclosures to Williams, in June 2001, and again in September 2002. According to Williams, M.R. disclosed that Watson had penetrated her vagina with his fingers.
¶ 5 In June 2001, Boling obtained a protection order against Watson, alleging that he sexually abused M.R. In January 2002, Boling petitioned the court for modification of the parenting plan based on the allegations of sexual abuse. Watson denied that he sexually abused M.R. and requested reinstatement of the original parenting plan.
¶ 6 After Boling obtained the protection order, Watson had no contact with his daughter for five months. After that, he had two hours of professionally supervised visitation with M.R. each week, from November 2001, through January 2004.
¶ 7 Trial occurred in January 2004. Fourteen witnesses testified, including: Boling; Watson; a court-appointed guardian ad litem (GAL); Williams; two detectives from the Lewis County Sheriff's Department; Dr. Jon Ingram, who conducted a psychosexual evaluation of Watson; and character witnesses for Watson.
¶ 8 Williams opposed any visitation, testifying that he believed it would have a detrimental emotional and psychological effect on M.R. He said that regardless of whether any sexual abuse actually occurred, M.R.'s perception that it occurred caused as much emotional damage as actual sexual abuse would.
¶ 9 Child Protective Services (CPS) investigated the allegations. In response to questioning by the CPS investigator, M.R. denied that any inappropriate touching occurred. The CPS investigator took M.R. to St. Peter Hospital's Sexual Assault Clinic for evaluation. M.R. again denied that any inappropriate touching occurred. The physical examination revealed no evidence of sexual abuse, but it did not rule out the possibility of abuse.
¶ 10 Based on the results of a criminal investigation by the Lewis County Sheriff's Department, the prosecutor's office declined to bring criminal charges against Watson.
¶ 11 Following trial, the court found that the allegations of sexual abuse were unproven. In its oral ruling, the court said, "I do want to emphasize on the other side of the coin that the evidence is not sufficient in and of itself to make a finding that he did not sexually abuse the child." Report of Proceedings *917 (Jan. 23, 2004) (RP) at 7-8. The court described Dr. Ingram's psychosexual evaluation of Watson a "whitewash," saying, "it didn't confirm abuse and it didn't confirm that abuse did not occur." RP at 11.
¶ 12 The court entered findings that M.R. has been exposed to conflict between the parents since she was 11 months old; the conflict clearly escalated following entry of the permanent parenting plan; she has a clear perception that she has been sexually abused and suffers from visitation anxiety; and she should continue therapy with Williams for her visitation anxiety and perception of sexual abuse.
¶ 13 The court also found that most supervised visits went well and that Watson conducted himself appropriately, stating, "The father did the most parenting he could in the short period of time." Clerk's Papers (CP) at 12. But the court entered a finding that "there is a substantial impairment of emotional ties between the father and [M.R.]" CP at 12.
¶ 14 The court denied Boling's modification petition for failure of proof. But rather than reinstate the original parenting plan, the court amended the temporary parenting plan and ordered even more restrictions on Watson's visitation than had been imposed pending resolution of Boling's modification petition.
¶ 15 The court explained, "When these are presented as a petition for modification, a normal course is to grant or deny the petition or dismiss the petition. Under the circumstances of this case, I can't in good conscience, given the present situation, dismiss the petition outright and revert back to the original parenting plan." RP at 12.
¶ 16 The court then cited RCW 26.09.191(3)(d) and ruled that Watson's visitation should be limited due to "an absence or substantial impairment of emotional ties between the parent and child." RP at 12. Based on Williams's recommendation to end visitation altogether, the court ordered two hours of supervised visitation, every other week, pending further orders. The court said that it would defer to Williams's judgment regarding whether and when unsupervised visitation would be appropriate.[1]
¶ 17 Watson filed both a notice of appeal and a motion for discretionary review. We granted review.
¶ 18 We also granted Watson's motion to supplement the record with orders and related declarations entered following the trial court's denial of Boling's modification petition.
¶ 19 The trial court held seven review hearings from May 2004 to July 2005. Reports from the visitation supervisor were uniformly positive.[2] But Williams consistently opposed Watson's requests for expanded visitation.[3] Although the trial court reduced *918 the visitation restrictions over time, as of June 2005  or four years after the sexual abuse allegations first arose  the court continued to restrict Watson's visitation to one eight-hour unsupervised visit every two weeks.[4]

ANALYSIS

1. APPLICATION OF RCW 26.09.260(4) AND RCW 26.09.191(3)
¶ 20 Watson first contends that the trial court erred in applying RCW 26.09.191 because it relates only to initial parenting plans, not modifications. He further asserts that the court cannot modify the plan absent a finding, under RCW 26.09.260(2)(c), that "[t]he child's present environment is detrimental to the child's physical, mental or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."
¶ 21 RCW 26.09.260 sets forth the criteria and procedures for modifying a parenting plan and contains varying standards depending on the parties' circumstances and the kind of modification requested. These criteria and procedures limit a court's range of discretion. In re the Custody of Halls, 126 Wash.App. 599, 606, 109 P.3d 15 (2005). Thus, a court abuses its discretion if it fails to follow the statutory procedures or modifies a parenting plan for reasons other than the statutory criteria. Halls, 126 Wash.App. at 606, 109 P.3d 15. We consider statutory construction as a question of law requiring de novo review. In re the Marriage of Caven, 136 Wash.2d 800, 806, 966 P.2d 1247 (1998).
¶ 22 RCW 26.09.260(1) sets forth a general standard for modification:
Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.
¶ 23 RCW 26.09.260(2) establishes a presumption against changing a previously decreed residential schedule:
In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless: ... (c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.
¶ 24 Sections (1) and (2) establish a preference for stability in a child's living arrangements, absent specific circumstances relating to the best interests of the child. RCW *919 26.09.260(4), however, creates an express exception, allowing the court greater flexibility to alter provisions relating to contact between the child and the noncustodial parent in certain situations. It provides: "The court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191." RCW 26.09.260(4).
¶ 25 RCW 26.09.191 sets forth both mandatory and discretionary restrictions on parenting plans. RCW 26.09.191(1)[5] and (2)[6] require the court to restrict a parent's contact and involvement with the child if the court finds that a parent has abandoned, neglected, or abused a child, or if the parent has a history of domestic violence, violent assault, or is an adjudicated sex offender.
¶ 26 In contrast, RCW 26.09.191(3)(d) confers discretion on the court to limit any provision of the parenting plan if the court finds that the parent's involvement or conduct may have an adverse effect on the child's best interests and if any of several enumerated factors exist, including "[t]he absence or substantial impairment of emotional ties between the parent and the child."
¶ 27 Contrary to Watson's assertion, RCW 26.09.191 applies not only to the initial adoption of temporary or permanent parenting plans, but also to the modification of parenting plans, as expressly stated in RCW 26.09.260(4). A court has authority to impose restrictions under RCW 26.09.191 when modifying a parenting plan to the same extent it has such authority at the time of dissolution. See Bower v. Reich, 89 Wash. App. 9, 18, 964 P.2d 359 (1998) (applying this principle with respect to the "minor modification" provision under RCW 26.09.240(5)).
¶ 28 If the court had found that the alleged sexual abuse occurred, it would have been required to restrict Watson's residential time and to eliminate the mandatory alternative dispute resolution and mutual decision-making provisions of the parenting plan. RCW 26.09.191(1)(b), (2)(a)(ii). Upon finding insufficient evidence of the sexual abuse allegation, the court still had discretion, under RCW 26.09.191(3)(d), to restrict Watson's residential time if the evidence before it supported a finding that Watson's involvement or conduct would adversely affect M.R.'s best interests because of an "absence or substantial impairment of emotional ties between the parent and the child."
¶ 29 But the trial court erred when it applied RCW 25.09.191 in this case. Boling based her modification petition on the allegation of sexual abuse, and she sought restrictions on that basis alone. In her petition, she cited RCW 26.09.260(5), (8) and (10), expressly stating that RCW 26.09.260(1) and (2) did not apply and made no mention of RCW 26.09.260(4).[7] Whether the alleged abuse took place remained the primary issue *920 litigated. Neither party contemplated or argued the application of RCW 26.09.260(4) or RCW 26.09.191(3). The court invoked these statutes for the first time in its oral ruling. Upon denying Boling's modification petition, the court lacked authority to modify the parenting plan sua sponte on grounds that neither party had contemplated or argued.
¶ 30 But even had Boling properly raised the issue, substantial evidence does not support the trial court's decision to restrict visitation under RCW 26.09.191(3)(d).
¶ 31 We will uphold the trial court's findings of fact if substantial evidence supports them. In re the Marriage of McDole, 122 Wash.2d 604, 610, 859 P.2d 1239 (1993). But a finding under RCW 26.09.191(3) requires "more than the normal distress suffered by a child because of travel, infrequent contact of a parent, or other hardships which predictably result from a dissolution of marriage." In re the Marriage of Littlefield, 133 Wash.2d 39, 55, 940 P.2d 1362 (1997), superseded by statute on other grounds, Laws of 2000, ch. 21, § 1, as recognized by In re the Marriage of Christel, 101 Wash.App. 13, 24 n. 3, 1 P.3d 600 (2000). Further, a finding under RCW 26.09.191(3) must be supported by substantial evidence that the parent's "involvement or conduct" caused the restricting factor, in this case the "absence or substantial impairment of emotional ties between the parent and the child." See In re the Marriage of Wicklund, 84 Wash.App. 763, 770-71, 932 P.2d 652 (1996).
¶ 32 Here, the unproven allegation of sexual abuse does not provide substantial evidence in support of the visitation restrictions. Moreover, as we discuss further below, Watson's failure to disprove the sexual abuse allegation is not substantial evidence that his involvement or conduct will adversely affect M.R.
¶ 33 The court found that conflict between the parents escalated following the entry of the parenting plan, but there are no findings indicating that Watson caused the conflict. The court also found that M.R. had a subjective perception of sexual abuse and visitation anxiety but not that Watson caused it.
¶ 34 On the contrary, the evidence shows only that Watson did the "most parenting he could" under the restrictive conditions available to him. In the absence of substantial evidence establishing a nexus between Watson's "involvement or conduct" and the impairment of his emotional ties with M.R., the trial court erred in imposing visitation restrictions under RCW 26.09.191(3)(d).
¶ 35 The most reasonable inference from the record is that M.R.'s visitation anxiety is at least perpetuated by the court-imposed visitation restrictions, if not actually originating from them. But any impairment to the parent-child relationship resulting from the visitation restrictions imposed pending resolution of Boling's modification petition cannot supply substantial evidence in favor of the RCW 26.09.191(3)(d) restriction. To hold otherwise would be to permit the effects of the lawsuit itself to constitute grounds for modifying a parenting plan, inviting potential abusive use of conflict. Moreover, the provisions of a temporary parenting plan or other temporary order should not adversely affect the final determination of a parent's rights. See RCW 26.09.191(4) (a trial court may not draw any presumptions from a temporary parenting plan in determining the provisions of the permanent parenting plan or resolving a modification petition); and RCW 26.09.060(10)(a) ("A temporary order . . . [d]oes not prejudice the rights of a party or any child which are to be adjudicated at subsequent hearings in the proceeding."). Similarly, a court may not allow a protection order to serve as a de facto modification of a parenting plan. In re the Marriage of Barone, 100 Wash.App. 241, 247, 996 P.2d 654 (2000) (noting that the legislature intentionally made it easy to obtain a protection order but difficult to modify a parenting plan: a parent may not take advantage of the former to evade the latter).
¶ 36 A trial court runs afoul of these rules and abuses its discretion when it orders restrictions under RCW 26.09.191(3)(d) based on the adverse effects of the court's own temporary orders.
¶ 37 Here, the record lacks substantial evidence that the emotional impairment in M.R.'s relationship with Watson arose from *921 anything other than four years of severely restrictive visitation conditions resulting from Boling's unproven allegations of sexual abuse. The trial court abused its discretion when it imposed continued visitation restrictions after concluding that the sexual abuse allegations were unproven.

2. AMENDED TEMPORARY PARENTING PLAN
¶ 38 Watson further argues that the court had no authority to modify the parenting plan through temporary orders after it determined that Boling's petition should be denied for failure of proof. We agree.
¶ 39 A permanent parenting plan may be changed by an agreement, by petition to modify, and by temporary order. Marriage of Christel, 101 Wash.App. at 22, 1 P.3d 600. A court may not modify a parenting plan by temporary orders except as authorized by the statute. Marriage of Christel, 101 Wash. App. at 23, 1 P.3d 600.
¶ 40 A temporary parenting plan is "a plan for parenting of the child pending final resolution of any action for dissolution of marriage, declaration of invalidity, or legal separation which is incorporated in a temporary order." RCW 26.09.004(1) (emphasis added).
¶ 41 RCW 26.09.270[8] governs temporary orders and temporary parenting plans. A temporary parenting plan may be ordered either before entry of a final parenting plan or while a petition for modification of a final parenting plan is pending a full hearing. Bower, 89 Wash.App. at 19, 964 P.2d 359.
¶ 42 Here, the court appropriately ordered a temporary parenting plan pending a full hearing of Boling's modification petition. But after denying the modification petition following a full evidentiary hearing, the court erred when it ordered an amended temporary parenting plan that imposed even more severe restrictions on Watson's visitation with M.R.
¶ 43 We do not hold that a trial court lacks equitable discretion to order the gradual reunification of a parent and child following denial of a modification petition when the best interests of the child requires it. A trial court retains its common law equitable powers over matters relating to the welfare of minor children to the extent consistent with the Parenting Act, chapter 26.09 RCW. In re the Marriage of Possinger, 105 Wash.App. 326, 333-34, 19 P.3d 1109 (recognizing a trial court's common law authority to enter an interim rather than permanent parenting plan at the time of entry of a dissolution decree even in the absence of express statutory authority), review denied, 145 Wash.2d 1008, 37 P.3d 290 (2001). Under the Parenting Act, "the best interests of the child" remains the touchstone for trial court decisions affecting the welfare of minor children. RCW 26.09.002. When the best interests of the child require it, a court may defer permanent decisions on parenting issues. Possinger, 105 Wash.App. at 336-37, 19 P.3d 1109.
¶ 44 But the trial court abused its discretion here. The visitation restrictions appear to be based on the court's lingering suspicion that Watson sexually abused M.R. even though insufficient evidence shows that he did so. The court's express finding that the evidence was insufficient to disprove abuse suggests that the court improperly shifted the burden of proof to Watson to disprove the allegations after determining that Boling failed to meet her burden of proving them.
¶ 45 The statute imposes a rebuttable presumption on a parent to disprove that future contact will be harmful only when that parent is an adjudicated sex offender or has been found by clear and convincing evidence to have committed sexual abuse. See RCW 26.09.191(2).[9] Watson's failure to disprove *922 the alleged abuse is not a tenable ground on which to impose visitation restrictions. Also, the court's ruling that it would defer to Williams's judgment as to whether and when unsupervised contact would be appropriate suggests that the court held Watson to the rigorous restrictions that would be mandatory if Watson had been found to have sexually abused M.R., even though the evidence did not support such a finding.
¶ 46 As discussed previously, M.R.'s visitation anxiety and subjective perception of sexual abuse does not justify a restriction in Watson's visitation rights absent evidence that he caused the problem. The record does not support an inference that Watson is any more culpable than is Boling as the source of M.R.'s fears and beliefs.[10] The lack of evidence that Watson did anything wrong and the lack of evidence of harm resulting from his conduct renders the visitation restrictions inappropriate.
¶ 47 Watson argues that we should follow Division Three's reasoning in In re the Marriage of Shryock, 76 Wash.App. 848, 888 P.2d 750 (1995). Again, we agree.
¶ 48 In Shryock, a father petitioned for modification of custody based on the child's integration into his home, with the mother's consent, in substantial deviation from the original parenting plan. 76 Wash.App. at 849, 888 P.2d 750. The mother opposed the petition and submitted a proposed parenting plan together with her answer, as required by statute. Shryock, 76 Wash.App. at 849-50, 888 P.2d 750. Her proposed plan sought restrictions on the father's residential time based on both mandatory and discretionary factors under RCW 26.09.191. Shryock, 76 Wash.App. at 849-50, 888 P.2d 750.
¶ 49 The court rejected Shryock's petition after finding that the child was not integrated in the father's home. Shryock, 76 Wash. App. at 850, 888 P.2d 750. But rather than reinstate the original parenting plan, the court adopted most of the changes the mother requested. Shryock, 76 Wash.App. at 850, 888 P.2d 750. Division Three reversed, holding that the trial court lacked authority to modify the parenting plan after finding that the father's modification petition should be denied. Shryock, 76 Wash.App. at 852, 888 P.2d 750. Rather, absent a valid cross-petition by the mother, the original parenting plan should have been reinstated on the court's denial of the father's modification petition.
¶ 50 Here, the trial court properly denied Boling's modification petition after finding that the sexual abuse allegations were unproven. But on its own motion, the trial court ordered visitation restrictions on grounds that neither of the parties had contemplated. Once it denied the underlying modification petition, the trial court lacked statutory authority either to modify the parenting plan on its own motion or to order continued visitation restrictions as it did here in an amended temporary parenting plan.
*923 ¶ 51 We reverse and remand for reinstatement of the original parenting plan.
We concur: ARMSTRONG, J., and VAN DEREN, A.C.J.
NOTES
[1] The court entered inconsistent findings and conclusions, stating both that Boling's modification petition was denied and that the original parenting plan should be modified based on RCW 26.09.191(3)(d). We analyze the court's later visitation restrictions both as a modification and as a temporary order.
[2] The visitation supervisors indicated that Watson maintained consistently appropriate contact with M.R. and that M.R. generally appeared comfortable with Watson and happy to see him. M.R. expressed excitement and pleasure about her trips to various places with Watson. Watson took her to the playground, the mall, McDonald's, Burger King, and to play miniature golf, among other things.
[3] M.R. met with Williams on a weekly basis throughout the review period. Williams consistently reported that M.R. expressed anxiety about visiting Watson. Williams reported that she seemed more relaxed on the weeks she did not see Watson. Williams urged the court to move very gradually in expanding the length or frequency of M.R.'s visitation.

Williams also opposed a Christmas visit with Watson and Jennifer, Watson's new wife. In January 2005, he said he would not oppose three  or four-hour, biweekly visitation. In March 2005, he reported that M.R. seemed to enjoy her visits. But Williams attributed this to M.R.'s enjoyment of her time with Jennifer. He reported that M.R. said she did not like Watson and she did not trust him. Williams said he would not oppose six-hour, biweekly visits. In June 2005, Williams noted that visits seemed to be going well, but he opposed any change in the visitation schedule and, in particular, he opposed overnight visitation.
Williams met with Watson and M.R. together for the first time in June 2005. (The parties dispute the reason for the long delay in this meeting). In April 2004, the court had ordered both parents to participate in M.R.'s therapy. According to Williams, the delay resulted from repeated "scheduling conflicts rather than lack of interest on the part of either party." CP at 80. Watson faults Williams for not returning phone calls and for not meeting with him earlier. Williams reported that the session went well. They discussed the possibility of overnight visits. Watson reassured M.R. that he would do what he could to make the visits comfortable for M.R. M.R. "responded well to this." CP at 51. Williams wrote to the court, "As for now, if [M.R.] is comfortable, I am in support of allowing a trial of an overnight visit." CP at 51.
[4] In May 2004, the court ordered two hours of biweekly visitation under professional supervision. In September 2004, the court ordered continued professional supervision but directed the parties to plan for unsupervised visitation "so that the original Parenting Plan can ultimately be reinstated." CP at 154. In October 2004, the court ordered that Watson have two supervised visitations at his home, followed by unsupervised visitation at a public place. In December 2004, the court granted Watson's request to gradually include his then fiancée in the visits and to have two three-hour visits over the holidays. In January 2005, the court expanded the biweekly visits from two hours to four. The court also granted Watson's request that M.R. attend his wedding ceremony with Jennifer. In March 2005, the court ordered that supervision was no longer necessary and expanded the biweekly visits to eight hours. In June 2005, the court ordered continued eight-hour, biweekly visits but denied Watson's request for overnight visitation. At the end of June, the court ordered the first overnight visit with Watson and Jennifer. The court ordered that overnight visits could continue with the agreements of the parties, with additional court review in the event of disagreement.
[5] RCW 26.09.191(1) provides:

The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: (a) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (b) physical, sexual, or a pattern of emotional abuse of a child; or (c) a history of acts of domestic violence as defined in RCW 26.50.010(1) or an assault or sexual assault which causes grievous bodily harm or the fear of such harm.
[6] RCW 26.09.191(2)(a) provides:

The parent's residential time with the child shall be limited if it is found that the parent has engaged in any of the following conduct: (i) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (ii) physical, sexual, or a pattern of emotional abuse of a child; (iii) a history of acts of domestic violence as defined in RCW 26.50.010(1) or an assault or sexual assault which causes grievous bodily harm or the fear of such harm; or (iv) the parent has been convicted as an adult of a sex offense under [various statutes].
[7] RCW 26.09.260(5) permits minor modifications that do not involve a change of either primary residence or more than 24 full days each year; RCW 26.09.260(8) permits reduction in visitation when the noncustodial parent voluntarily fails to exercise residential time for a year or longer; RCW 26.09.260(10) permits adjustments in the nonresidential aspects of a parenting plan on a substantial change in circumstances of either parent or child, when in the best interest of the child.
[8] "A party seeking a temporary custody order or a temporary parenting plan or modification of a custody decree or parenting plan shall submit together with his motion, an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his affidavit, to other parties to the proceedings, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted." RCW 26.09.270.
[9] RCW 26.09.191(2) sets forth a detailed framework of mandatory restrictions on a parent's residential time in cases of sexual abuse. RCW 26.09.191(2)(d) creates a rebuttable presumption that a parent who has been convicted of a sex offense poses a present danger to a child and requires the court to restrain the parent from contact unless the parent rebuts this presumption. This presumption can be rebutted only on a written finding (a) that parent-child contact is appropriate and poses a minimal risk, (b) that the child's therapist believes such contact would be in the child's best interest, and (c) that the offending parent has successfully engaged in treatment for sex offenders, or is making progress in such treatment, and his/her therapist believes contact would be appropriate and pose minimal risk to the child. RCW 26.09.191(2)(f)(ii).

RCW 26.09.191(2)(k) forbids a court from ordering unsupervised contact between an offending parent and a child abused by that parent, except under similarly restrictive conditions. And RCW 26.09.191(2)(m)(ii) forbids a court from permitting a parent to have contact with a child if the parent has been found by clear and convincing evidence in a civil action or by a preponderance of the evidence in a dependency action to have sexually abused the child, except on recommendation by the child's therapist that the child is ready for contact and will not be harmed by it. RCW 26.09.191(2)(n) permits a court not to apply these restrictions if it expressly finds that contact between the parent and the child will not cause the child harm, and that the recurrence of harmful or abusive conduct is a remote possibility, or if the court expressly finds that the parent's conduct did not have an impact on the child.
[10] According to a letter from Boling's therapist, Boling continued to believe Watson should have been criminally prosecuted for sexually abusing M.R., had difficulty accepting the court's decision not to terminate visitation, and continued to fear for M.R.'s safety in Watson's presence.