# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

JENNIFER CORINNE ANDERSON,

                Respondent,

and

LOREN HEATH ANDERSON,

                Appellant.

No. 79612-7-I

DIVISION ONE

UNPUBLISHED OPINION

DWYER, J. — Loren Heath Anderson appeals a final parenting plan entered after a dissolution trial. He claims that the trial court erred by imposing restrictions on his residential time and a new trial is warranted because the court granted a request to appoint a guardian ad litem (GAL) without sufficient time for a GAL to file a report. Because the trial court acted within its authority to impose restrictions under RCW 26.09.191, substantial evidence supports the court's findings, and no GAL was ever appointed, we affirm.

I

Jennifer and Loren Heath (Heath) Anderson[1] were married in 2012 in Issaquah, Washington. They have one child, G.A., who was three years old at the time of trial. Heath also has a child from a previous marriage, A.A., who was 16 years old at the time of trial.

---

[1] To avoid confusion we refer to the parties by their first names.

In 2013, Heath began working for Bank of America as a sales manager and Jennifer began working at Allyis, where she currently works as a senior project manager on a marketing contract with Microsoft. In January 2015, Heath left his job at Bank of America. Jennifer was pregnant with G.A. at the time. In May 2015, Heath tried to start a business and began selling juices and smoothies at farmers markets. Heath eventually ran the juice business out of a shop in Issaquah after G.A. was born.

In February 2017, Jennifer moved out and the parties separated. In October 2017, Jennifer filed a petition for dissolution. No formal parenting plan was in place, though the parties agreed to a schedule whereby Heath had G.A. every other weekend from Friday at 5:30 p.m. until Monday drop off at school, with additional visits during the week. There were conflicts over exchanges and pick up times during which Heath sent Jennifer disparaging texts.

In March 2017, G.A. began attending a Montessori preschool across the street from Jennifer's home. She started in the toddler room and was enrolled five days a week. In May 2018, following a teacher conference in which school staff commented on G.A.'s reluctance to leave on days Heath picked her up, Heath stopped taking G.A. to the school during his residential time, claiming the school was biased against him. Instead, he took her to his workplace on days he had to work. On one occasion she wandered out of the shop and into the alley.

In June 2018, Jennifer filed a motion for a temporary order to allow her to move with G.A. to Oregon so she could be closer to her family. Jennifer's

employer was willing to allow her to work remotely to accommodate the move. The court denied the motion.

A few months later, after the Labor Day weekend, Jennifer took G.A. on a two-week trip to Portland. She notified Heath and let him know where she was going and how long she would be gone. During the trip, Jennifer attempted to facilitate G.A.'s nightly phone calls with Heath but he did not answer her calls on three of those nights. He also sent texts to Jennifer accusing her of kidnapping G.A.

On September 7, 2018, Jennifer moved for temporary orders and requested that the court appoint a guardian ad litem (GAL) due to "grave concerns for the safety and well-being of [G.A.]." Jennifer raised concerns about Heath's emotional abuse of G.A., his inability "to peaceably co-parent," and risks posed by Heath's teenage son A.A., who had a pending At-Risk Youth petition in juvenile court. She also raised concerns about Heath keeping G.A. home from preschool and taking her to work with him during his residential time, during which he was not able to properly supervise her. By this time, G.A. had been moved to the preschool room because she had turned three years old. Heath would not acknowledge that she was in preschool, asserting it was just daycare. He refused to attend preschool events such as Dad's night or tour her new classroom.

On September 21, 2018, a commissioner ordered that a GAL be appointed on the condition that the court continued the trial date currently set for October 29, noting that a GAL is required to file a report 30 days before trial. The

3

commissioner also entered an order that "[A.A.] will not be left unsupervised with [G.A.]" and "the parties will continue to follow the same residential schedule including preschool attendance if Petitioner provides [the] contract that identifies [the] facility as preschool."

Jennifer moved to continue the trial date. Heath objected. The trial court denied the motion to continue. No GAL was appointed. The parties proceeded to trial as scheduled on October 29, 2018.

After a five-day trial, the trial court entered a final parenting plan with a finding that Heath's residential time should be limited under RCW 26.09.191 "due to emotionally abusive behavior." Under the parenting plan's residential schedule, Heath had residential time with G.A. every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. Heath was restricted from bringing G.A. to work as follows:

> During the Father's parenting time, [G.A.] is not to be at Father's shop or at the Farmer's Market while Father is working at any time until [G.A.] is at least 8 years old, and then only by agreement. The Father shall notify the Mother by Noon the Wednesday before his weekend should he need to work on a day he has [G.A.].
>
> If Father needs to work on his Saturday with [G.A.], then the mother will drop off [G.A.] at the shop on Saturday at 5 pm instead of Friday at 5 pm. Father will forfeit this time and there will be no makeup time allowed.
>
> If Father needs to work on his Sunday with [G.A.], then the mother will pick [G.A.] up at the shop at 9 am Sunday. Father will forfeit this time and there will be no makeup time allowed.

4

Under a section titled "Safe Environment," the parenting plan provided that "[G.A.] shall not be left alone with [A.A.]." The court gave Jennifer sole decision-making on all major decisions, finding:

> Major decision-making should be limited because one of the parents does not want to share decision-making and this is reasonable because of the history of each parent's participation in decision-making; the parents' ability and desire to cooperate with each other in decision-making; location considerations of the child.

Heath filed a motion for reconsideration, claiming among other things that the evidence did not support a finding that he emotionally abused G.A. The trial court denied in part and granted in part the motion to reconsider and amended the parenting plan to add an abusive use of conflict finding in support of the limitations imposed under RCW 26.09.191.

Heath appeals.

## II

Heath claims that the trial court erred by entering a parenting plan with restrictions under RCW 26.09.191 and granting Jennifer's request to appoint a GAL. He further contends that cumulative errors deprived him of a fair trial and the "appearance of fairness" doctrine requires remand to a different judge.

## A

### Parenting Plan

Heath challenges the trial court's imposition of restrictions under RCW 26.09.191, claiming (1) the court exceeded its jurisdiction because Jennifer did not request them in her petition, and (2) the trial court's findings of emotional

5

abuse and abusive use of conflict are not supported by substantial evidence and are unrelated to the restrictions imposed.[2]

We review parenting plans for an abuse of discretion, which occurs when a trial court's decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). We accept the trial court's findings of fact as verities on appeal so long as they are supported by substantial evidence. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted. Katare, 175 Wn.2d at 35. We defer to the trial court as the finder of fact to make credibility determinations and weigh evidence. State v. Merritt, 200 Wn. App. 398, 408, 402 P.3d 862 (2017), aff'd, 193 Wn.2d 70, 434 P.3d 1016 (2019).

Superior courts have original jurisdiction of "all matters . . . of divorce." WASH. CONST. art. IV., § 6. The trial court has broad discretion to fashion a permanent parenting plan but must be guided by provisions in chapter 26.09 RCW. Katare, 175 Wn.2d at 35-36. Among these are statutes requiring the court to consider limitations upon a parent's involvement with the child. Katare, 175 Wn.2d at 35-36; RCW 26.09.187(3) ("The child's residential schedule shall be consistent with RCW 26.09.191."). Under RCW 26.09.191(3), the court has authority to limit any provisions of the parenting plan where a parent's involvement or conduct may have an adverse effect on the child's best interests, including "[t]he abusive use of conflict by the parent which creates the danger of

---

[2] Heath does not assign error to or otherwise challenge the court's finding that Jennifer shall have sole decision-making on major decisions involving the child.

serious damage to the child's psychological development," and "such other factors or conduct as the court expressly finds adverse to the best interests of the child." RCW 26.09.191(3)(e), (g).

In In re Marriage of Fan & Antos, No. 77490-5-I (Wash. Ct. App. April 1, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/774905.pdf, an unpublished decision cited by Jennifer, we rejected the same argument Heath advances here:

> Antos argues that the trial court did not have jurisdiction to enter parenting plan restrictions under RCW 26.09.191, when Fan's pleadings did not request those restrictions. . . .
>
> His arguments ignore the mandatory language of RCW 29.09.187(3)(a), requiring the trial court to create a parenting plan consistent with RCW 26.09.191. Because the statutory scheme requires the court to consider parenting plan restrictions, it was not an abuse of the trial court's authority or discretion to consider those restrictions. Instead, failing to comply with the statute's mandatory language would have been an abuse of the trial court's discretion.

Fan, No. 77490-5-I, slip op. at 4. We adopt that reasoning here. The court had jurisdiction over the dissolution proceeding and properly considered restrictions under RCW 26.09.191.

The cases cited by Heath do not require a different result. As he acknowledges, In re Marriage of Leslie, 112 Wn.2d 612, 772 P.2d 1013 (1989), addresses the court's authority to grant relief from a default judgment, which is not at issue here. Nor is In re Marriage of Watson, 132 Wn. App. 222, 130 P.3d 915 (2006), applicable. As the court acknowledged in Katare, Watson "simply indicate that restrictions cannot be imposed for unfounded reasons," which was not the case here. 175 Wn.2d at 37.

In Watson, following a trial on a petition to modify a parenting plan, the trial court denied the modification petition but sua sponte entered a temporary order imposing restrictions under RCW 26.09.191(3) on grounds not raised by either party. 132 Wn. App. at 233. The mother alleged sexual abuse in her petition and at trial but the court imposed restrictions based on substantial impairment of emotional ties with the child. The evidence at trial showed that the father's impaired relationship with the child was only a result of severe restrictions on his residential time based on the unfounded abuse allegations. Watson, 132 Wn. App. at 235. On appeal, the court reversed, concluding that "[u]pon denying [the mother]'s modification petition, the court lacked authority to modify the parenting plan sua sponte on grounds that neither party had contemplated or argued," and that substantial evidence did not support the restrictions. Watson, 132 Wn. App. at 233.

Unlike in Watson, the trial court here did not impose restrictions under RCW 26.09.191 for unfounded reasons. The trial court did not impose restrictions sua sponte after denying a petition for modification of a parenting plan; rather, the trial court was tasked with creating a permanent parenting plan, requiring it to consider limitations under RCW 26.09.191. Katare, 175 Wn.2d at 35-36; RCW 26.09.187(3). And the record is clear that both parties contemplated and argued the restrictions imposed. Jennifer raised issues of emotional abuse and abusive use of conflict well before trial in her motion for temporary orders and again at trial. Heath responded to those allegations before and at trial. Indeed, Heath succeeded in preventing a GAL from investigating

these allegations by opposing Jennifer's motion to continue the trial to allow appointment of a GAL. Moreover, as discussed below, substantial evidence supports the court's findings.

Heath next contends that the trial court's findings of emotional abuse and abuse of conflict are not supported by substantial evidence and do not support the restrictions imposed. He does not assign error to the court's findings of fact, but argues the court's findings and the trial record do not support imposition of the restrictions.

The trial court made the following unchallenged findings of fact:

46. There was conflict over pickup times for visitation. Petitioner had some flexibility due to her work schedule. When Respondent stopped taking her to school, he felt he could decide what time [G.A.] should go back to her Mother's house.

47. Respondent has kept [G.A.] out of school without telling Petitioner. On at least one occasion Petitioner went to the school to take snacks and pick [G.A.] up, and she wasn't there.

48. On 2/20/18 when Petitioner texted respondent asking whether she was sick since she wasn't in school, his response was "Not really your business . . . ."

49. There were contentious emails about exchanges by both parties.

50. There were many texts or emails from him comparing Petitioner to [A.A]'s mother . . . with whom he also had a contentious relationship, and calling Petitioner a "psychopath . . . 2.0."

51. There were also texts accusing Petitioner of kidnapping [G.A.] when she took her to Portland: "She was kidnapped, so even though she is young you have caused some lifelong issues . . . like what happened to [A.A.]."

52. Those statements constitute emotional abuse.

53. He took [G.A.] to work, believing it to be safe, even if he was working and unable to give her his full attention.

54. His employees are high school students, and only work after school.

55. He pays for employees to take care of the store sometimes when he takes care of [G.A.], which takes money from the business.

56. He texted her "what am I supposed to do with the business, it

9

doesn't support me, you do."
57. Respondent believes [G.A.]'s school is unsafe, but has no substantiated reason to believe that. She has appeared to have normal childhood scrapes and scratches.
. . . .
62. Petitioner went on a 2 week trip to Oregon with [G.A.] after the Labor Day weekend, and texted Respondent where she was going and how long she would be gone.
63. She called him at the designated nightly phone call time with [G.A.], but he didn't answer on three of those nights.
64. He repeatedly refers to that trip as kidnapping [G.A.].

We accept these unchallenged findings as verities on appeal. Estate of Nelson v. Dep't of Labor & Indus., 175 Wn. App. 718, 723, 308 P.3d 686 (2013).

In addition to these unchallenged findings, the evidence at trial supports the court's findings of emotional abuse and abusive use of conflict. The evidence showed that Heath's conflict with Jennifer had adverse effects on G.A. Heath stopped taking G.A. to preschool because he felt the school was biased against him. Instead, he took her to his workplace where he admitted he could not always keep her within his sight while he was working and that on one occasion she wandered into the alley on her own.[3] He also testified that after G.A. was moved to the preschool room, he refused to attend preschool events such as Dad's night and a tour of her new classroom because he did not agree to preschool. G.A.'s preschool teacher testified that after Heath stopped taking G.A. to school regularly, she noticed a shift in G.A.'s personality and G.A. became "a little more unhappy and not sure of things." The teacher testified that "this was a big shift from a child that I saw who was a leader."

---

[3] Without citation to the record, Heath points to his testimony that the shop contained a child's play area and he was always within sight of G.A. We defer to the trial court to resolve conflicts in testimony and assess credibility. Merritt, 200 Wn. App. at 408.

Jennifer also testified that Heath withheld nightly calls with G.A. when he was angry with Jennifer. In addition to withholding his calls during the Portland trip, the weekend after Jennifer filed the relocation motion Heath turned his phone off and would not allow Jennifer to talk to G.A. When G.A. returned to Jennifer, she "came back a different child," and did not understand why Jennifer had not called. Jennifer further testified that after the Portland trip, G.A. spent the weekend with Heath and when she returned to Jennifer, G.A. was "distraught" and needed Jennifer to affirm that she loved her and was not going to leave her. Jennifer also testified to a time when she was a few minutes late bringing G.A. to Heath for an exchange and he came up to her car screaming at her that she was late. She asked him to step back so G.A. would not see him but G.A. had seen him and was in tears. Substantial evidence supports the court's findings of abusive use of conflict and emotional abuse.

The trial court's findings and the evidence also support the restrictions imposed. A court may impose restrictions under RCW 26.09.191(3) where necessary "to protect the child from physical, mental, or emotional harm." Chandola, 180 Wn.2d at 648. "[T]he trial court need not wait for actual harm to accrue before imposing restrictions on visitation." Katare, 175 Wn.2d at 36. "'Rather, the required showing is that a danger of . . . damage exists.'" Katare, 175 Wn.2d at 36 (quoting In re Marriage of Burrill, 113 Wn. App. 863, 872, 56 P.3d 993 (2002)). The restriction must be reasonably calculated to prevent such a harm. Chandola, 180 Wn.2d at 648.

The trial court imposed limitations on Heath's residential time based on its finding that Heath's conduct "may harm the child[ ]'s best interests." As the court's findings and the evidence establish, Heath's abusive use of conflict presents a danger of damage to G.A.'s emotional well-being and physical safety. Withholding his contact with G.A. and preventing her contact with her mother damages the child-parent relationship. Refusing to take G.A. to preschool where she was safe and engaged in age-appropriate activities, and taking her instead to work where he could not realistically supervise a three-year-old adversely affects G.A.'s social and emotional well-being and poses risks to her physical safety. Heath's refusal to participate in preschool events was further damaging to the child-parent relationship.

The trial court did not abuse its discretion by limiting Heath's residential time to every other weekend and preventing him from taking G.A. to his workplace. By minimizing opportunities for Heath to engage in conflict with Jennifer and keeping G.A. in a safe environment, such limitations are reasonably calculated to prevent harm to G.A..

Heath also challenges the parenting plan's provision that "[G.A.] shall not be left alone with [A.A.]," as a restriction "unrelated to the purported impairments." Heath mischaracterizes this provision as a restriction on his involvement with the child imposed under RCW 26.09.191. Rather, this condition was included under the "Safe Environment" provisions of the parenting plan and relates to the child's involvement with a sibling who, Heath acknowledges, does

not live with him. Heath fails to show that the trial court abused its discretion by including this provision in the final parenting plan.

In establishing a permanent parenting plan, the trial court shall consider "[t]he emotional needs and developmental level of the child," and "[t]he child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities." RCW 26.09.187(3)(a)(iv),(v). Here, the trial court found:

> 4. Respondent has a son, [A.A.], about 16 years old, from a prior marriage.
> 5. Their daughter [G.A.], is 3 years old (DOB 8/16/15).
> . . . .
> 42. [A.A.] has pending juvenile court offender matters.
> 43. Respondent testified that [A.A.] has never been charged with anything. Respondent either knew or should have known that he has, in fact, been charged.

Heath does not challenge these findings.

Heath also testified at trial that A.A. has behavioral issues that warranted filing an At-Risk Youth petition. Indeed, he agreed that G.A. should not be left unsupervised with A.A., or anyone for that matter:

> Q.    Are you happy to agree that [G.A.] will not be left unsupervised with [A.A.]?
> A.    I don't leave [G.A.] unsupervised with anybody.
> Q.    So the answer is yes?
> A.    Yes.

The trial court did not abuse its discretion by including in the final parenting plan a provision that prevents G.A. from being left alone with A.A..

13

B

Appointment of GAL

Heath claims a new trial is warranted because the trial court granted

Jennifer's request for a GAL in violation of RCW 26.12.175(1)(b), which requires

a GAL to file a report 60 days before trial. Heath's claim has no basis in law or

fact. The record is clear that the commissioner's order granting the request for a

GAL was conditioned on the court continuing the trial date, precisely because a

GAL report could not be filed within the required time limits:

> This commissioner notes the trial date has been continued to
> 10/29/2018 and any GAL report would be due 30 days prior to
> trial. . . . This court hereby makes the following self effecting order
> – the parties shall appoint a GAL for this case within a week on
> condition that Judge Mack grants a continuance of the current trial
> date which is 10/29/2018.

At Heath's insistence, the court denied Jennifer's motion to continue and

no GAL was appointed. Accordingly, RCW 26.12.175(1)(b) does not apply. In

any event, Heath cites no authority requiring remand for a new trial where a GAL

report is not filed within the time limits of the statute. Where no authority is cited

in support of a proposition, the court is not required to search for it and may

assume counsel had diligently searched and found none. DeHeer v. Seattle

Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

C

Cumulative Error and Bias

Heath's claim of "cumulative error" is likewise without basis. First, Heath

demonstrates no error, much less cumulative error. Moreover, he cites no

authority applying the cumulative error doctrine in civil cases. See DeHeer, 60 Wn.2d at 126.

Finally, Heath claims that remand to a different judge is required "to preserve the appearance of fairness," contending that the trial court demonstrated bias against him. Because we affirm, we need not address the issue.[4]

D

Attorney Fees

Jennifer requests an award of reasonable attorney fees on appeal, claiming that Heath filed a frivolous appeal and was intransigent. We exercise our discretion and decline to award appellate fees.

Affirmed.

WE CONCUR:

---

[4] As Jennifer notes, the trial judge has since retired.