# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Parenting and Support of T.M., | No. 55327-9-II |
| Child, | |
| STATE OF WASHINGTON, | |
| Respondent, | UNPUBLISHED OPINION |
| vs. | |
| TIFFANY JONES-HULSEBUS (nka Strand), | |
| Defendant, | |
| TANNER PAUL MILLER, | |
| Appellant. | |

MAXA, J. – Tanner Miller appeals the trial court's entry of a 2020 parenting plan, which followed a trial on Miller's motion for a major modification of a 2016 parenting plan involving Miller; his child, TM; and TM's mother, Tiffany Strand. We hold that the trial court did not abuse its discretion in entering the parenting plan. Accordingly, we affirm the trial court's 2020 parenting plan.

FACTS

Miller and Strand are the parents of TM, who was born in 2014. Both parties have struggled with significant substance abuse and mental health issues. They also have engaged in extensive litigation over TM.

In March 2016, the trial court entered a final parenting plan, naming Strand as the primary custodial parent with Miller having residential time with TM every other weekend and on every Tuesday morning until Wednesday morning and Friday during the day.

In December 2018, Miller filed a petition for a major modification of the 2016 parenting plan to change the primary custodial parent from Strand to himself. He also moved for an adequate cause decision. Miller alleged that TM had lived with him most of the time for more than a year and Strand only saw TM occasionally. He also asked the court to limit Strand's parenting time. Strand opposed the change and requested the appointment of a guardian ad litem (GAL).

In January 2019, the trial court entered an order finding adequate cause to modify the parenting plan, changing TM's residential placement to Miller, and allowing Strand two supervised visits per week with TM. The court also ordered that either parent could request drug testing of the other parent at any time. The court stated that the residential placement was on a temporary basis. The court appointed a GAL for TM.

In March, the GAL petitioned for a finding of contempt against Miller for failing to comply with the trial court's January 2019 order by not taking a drug test. She alleged that Miller had a relapse with drugs while he was TM's sole caregiver. She also alleged that Strand had obtained a now-expired protection order against Miller in 2016 because he had strangled her

to unconsciousness. Finally, she alleged that Miller had conspired with his mother to prevent her from conducting a welfare check on TM. The GAL recommended that temporary custody of TM be changed from Miller to Strand until the end of her investigation.

In response, Miller admitted that he relapsed with methamphetamine, but stated that TM never was in danger. The trial court ordered that Miller must be supervised at all times by a responsible adult while TM was in his care.

Miller thereafter filed a motion to remove the GAL, alleging that she was biased against him and his mother (who also cared for TM) and skewed information in Strand's favor. The record does not contain an order on this motion, but the GAL was not replaced.

In May, the GAL filed a lengthy preliminary report. She recommended that TM remain in the residential care of Miller on a temporary basis, with Strand having supervised visitation every other weekend for two hours and Strand's mother having overnight visitation every other weekend.

In June, Strand filed an objection to the current temporary parenting plan. She asserted that she should have primary custody of TM. She also alleged continued substance abuse by Miller.

On July 10, the trial court entered another temporary parenting plan. The court found that both parents were subject to parenting limitations because they both had a long-term problem with drugs, alcohol, or other substances and Miller had a history of domestic violence. The court required Miller's mother to supervise him when Miller was caring for TM and required Strand's mother to supervise her during her visits with TM on every Wednesday and overnight on every other weekend. The court further ordered that both parties be transparent

with their recovery from addiction and participate with their respective treatment plans. The court reserved ruling on several issues until after a trial was held on the final orders.

In October, the GAL moved ex parte to have Miller drug tested. She believed he might have relapsed. The trial court granted the motion. On October 30, the trial court entered a temporary order changing primary care of TM to Strand based on evidence that Miller had relapsed twice in the previous two weeks.

In August 2020, the GAL filed a motion to suspend Miller's visitation due to another alleged relapse. The trial court suspended Miller's visits with TM until the upcoming trial on the final parenting plan.

Trial on Miller's major modification petition began in September 2020. Before the trial, the GAL filed a report with the trial court, recommending that primary custody be with Strand and that Miller have supervised visitation once a week for two hours.

At trial, Miller testified that both he and Strand began actively using drugs in 2017. Miller testified that he attempted to quit but frequently relapsed. Miller's community corrections officer testified that he saw no indication Miller was a danger to TM even in light of his addiction and relapse. Miller's mother also testified in favor of Miller. She expressed her frustration with the GAL.

Strand testified that she had been clean and sober for approximately 18 months. She testified that she had taken a hair follicle drug test a few weeks before trial and tested negative.

The GAL testified that Miller refused to take a hair follicle drug test prior to trial. She testified that Strand had successfully completed addiction treatment, moved on with her life even

without substantial resources, and had zero relapses in the recovery process. The GAL testified that it was her recommendation that TM should be placed in Strand's primary care.

In October 2020, the trial court entered an order denying Miller's request for a major modification of the parenting plan because a change was not in TM's best interest. The court also entered a new final parenting plan. The plan provided that TM would primarily reside with Strand. The court ordered residential time between Miller and TM to progress in five phases, each phase allowing more contact between Miller and TM if Miller completed Alcoholics Anonymous or Narcotics Anonymous meetings and parenting classes and remained clean and sober.

Miller appeals the trial court's 2020 final parenting plan.

ANALYSIS

A.    STATUTORY PROCESS FOR MODIFICATION

RCW 26.09.260 governs modification of a parenting plan. Under RCW 26.09.260(1), the trial court may modify the existing parenting plan only if it finds based on new or previously unknown facts that there has been a substantial change in the circumstances of the child or the nonmoving party and that the modification is in the child's best interest and necessary to serve the best interests of the child. After granting a motion for modification, the trial court will enter a new final parenting plan.

Under RCW 26.09.270, a party seeking to modify a parenting plan must submit a motion and an affidavit setting forth facts showing adequate cause for the requested modification. The trial court must deny the motion without a hearing unless the affidavit establishes adequate cause to schedule a hearing. RCW 26.09.270; *see In re Marriage of MacLaren*, 8 Wn. App. 2d 751,

770-71, 440 P.3d 1055 (2019). If the court finds adequate cause, the court must schedule a hearing on an order to show cause why the requested modification should not be granted. RCW 26.09.270.

We review the trial court's decision on modification for an abuse of discretion. *In re Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). A trial court abuses its discretion where its decision is manifestly unreasonable or based upon untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). There is a "strong statutory presumption in favor of custodial continuity and against modification." *MacLaren*, 8 Wn. App. at 771.

B.      OCTOBER 2020 PARENTING PLAN

Miller argues that the trial court abused its discretion in modifying the January 2019 parenting plan without finding a substantial change in circumstances as required in RCW 26.09.260(1) to modify a parenting plan. We disagree.

Miller is confused about the nature of the January 2019 order. The trial court entered a final parenting plan in March 2016. Miller moved for a major modification of that order under RCW 26.09.260(1) and also moved for an adequate cause decision under RCW 26.09.270. The January 2019 order did not adopt a final parenting plan. Instead, the trial court found adequate cause to schedule a full hearing on Miller's modification motion and entered a *temporary* parenting order.

The trial court and both counsel acknowledged on the record that the September 2020 trial concerned Miller's petition for modification. The trial did not involve the January 2019 temporary order. The only final parenting plan subject to modification was the March 2016

parenting plan. And the trial court denied Miller's request for a major modification in October 2020. Miller does not argue that the trial court abused its discretion in denying his motion to modify the March 2016 parenting plan.

The trial court's October 2020 parenting plan contained different provisions than the January 2019 temporary order. But no substantial change in circumstances is required to change a trial court's *temporary* parenting plan. *See In re Marriage of Watson*, 132 Wn. App. 222, 235-36, 130 P.3d 915 (2006) (temporary order is not final parenting plan). And Miller does not argue that the trial court abused its discretion in entering a revised parenting plan following trial.

We hold that the trial court did not abuse its discretion in entering the October 2020 final parenting plan.

C.      NO GAL BIAS

Miller argues that the GAL was biased in her investigation and conclusions and failed to maintain fairness and impartiality. We disagree.

A GAL must (1) have contact with all parties, (2) treat all parties with respect, (3) timely perform a parenting investigation, and (4) have independent objectivity and the appearance of fairness. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 28, 144 P.3d 306 (2006). We conclude that Miller has not shown that the GAL was biased to the extent that the trial court's October 2020 parenting plan should be reversed or that the trial court erred in denying his motion to remove the GAL.

CONCLUSION

We affirm the trial court's October 2020 final parenting plan.

No. 55327-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
WORSWICK, P.J.

_____
VELJACIC, J.