[No. 57765-4-I. Division One. November 6, 2006.]

*In the Matter of the Marriage of* SANDRA KAY PENNAMEN, *Appellant,* and MICHAEL ADAM PENNAMEN, *Respondent.*

*Philip A. Talmadge* and *Emmelyn Hart-Biberfeld* (of *Talmadge Law Group, P.L.L.C.*) and *Mark S. Gouras* (of *Hillman & Gouras, L.L.P.*), for appellant.

*Dennis J. McGlothin* and *James C. McGuire* (of *Olympic Law Group, P.L.L.P.*), for respondent.

¶1 AGID, J. — Sandra Roberson[1] and Michael Pennamen are divorced and have two young sons. On June 10, 2005, Roberson filed a Notice of Intended Relocation and Proposed Parenting Plan, indicating her intention to move with the children to Texas to live with her then fiancé, Cody Roberson, and his parents. Pennamen filed an untimely objection to the relocation alleging Roberson used drugs and, based on her drug use, requesting a major modification of the parenting plan. The trial court denied Roberson's relocation request, but it declined to modify the parenting plan. Roberson appeals, arguing that she should have been allowed to relocate by default because Pennamen's filing was untimely and, alternatively, the trial court erred both by considering and placing undue emphasis on her past drug use in deciding to deny relocation. We hold Roberson was not entitled to relocate by default because the trial court properly considered Pennamen's objection under Civil

---

[1] Sandra Pennamen married Cody Roberson on October 23, 2005, and took his last name. For convenience, we refer to appellant by her new last name, although at the time of trial she had the same last name as respondent.

Rule (CR) 55, and it did not err in weighing Roberson's past drug use along with the other relocation factors.

## FACTS

¶2 Sandra Roberson and Michael Pennamen married on July 14, 1996, in Seattle, Washington. The marriage was formally dissolved on November 4, 1999. They have two young sons. The court entered a parenting plan at the time of dissolution that gave the parents joint decision-making authority. The parties agreed to a provision which required the children to reside in King, Snohomish, or Pierce County. The plan designated Roberson as the primary custodial parent and gave Pennamen visitation every other weekend, alternating holidays, and three weeks in the summer.

¶3 When Roberson filed her Notice of Intended Relocation and Proposed Parenting Plan, she gave the following reasons in support of her plan to relocate:

1. I am engaged to be married.
2. My fiancé has a job waiting in Texas upon the court's approval of my move. This employment will pay better than his current job.
3. I have a job waiting for me in Texas that will provide me with more pay.
4. I have an uncle in the area where I will be residing, who is familiar with the children.
5. The move will provide a better life for my fiancé, myself and the children.
6. My fiancé has extensive family in the area I will be moving to, and the children will receive extensive support from them as well.

She served Pennamen personally. On July 1, 2005, Pennamen served Roberson with his Order on Objection to Relocation, but he did not file it with the court within the 30 day statutory period. He was not represented by counsel at the time.

¶4 On August 10, 2005, Roberson filed a motion asking the court to enter an order permitting her relocation by

default because Pennamen had not filed a timely objection. That same day, Pennamen filed a motion for an ex parte restraining order, seeking to restrain Roberson from taking the children from Washington. Pennamen also filed a petition for modification of the parenting plan, asking to be made primary residential parent, a motion for an order to show cause why Roberson should not be held in contempt for violating the parenting plan, and a motion for a temporary order restraining relocation of the children. He submitted two affidavits in support of his motions, alleging that both Roberson and her fiancé were methamphetamine users and that her fiancé had a history of domestic violence and may have abused her and the children. Pennamen also filed his objection to relocation, labeling it an "Amended" objection. On August 10, in response to Pennamen's allegations, Roberson got a urinalysis (UA) drug test, tested negative for all substances, and filed the results of the UA with her reply to Pennamen's motions.

¶5 On September 1, 2005, the family law commissioner found that nothing warranted allowing Roberson to relocate with the children before a trial on the issue. The commissioner did not cite CR 55, but he stated in his order that "the objection to relocation although late does not automatically allow a move because the objection was filed within a reasonable time." On September 22, 2005, the commissioner denied Pennamen's petition for modification of the parenting plan, ruling that there was "no nexus" between Roberson's prior drug use and the statutory requirements for modification under RCW 26.09.260. Both Pennamen and Roberson moved for revision of the decisions that went against them. On November 10, the trial court dismissed Pennamen's motion for revision of the commissioner's ruling on modification.

¶6 On December 13, 2005, there was a trial on the relocation issue. Roberson admitted at trial that some of her allegations in support of relocation were not true: she did not have a better paying job waiting for her in Texas, and her uncle had recently returned to Washington. She

also admitted to having resigned from her previous job rather than be fired because she tested positive for methamphetamine and refused to get treatment. But she claimed that she had not used drugs since May 1, 2005, repeatedly tested negative for drugs during the various court proceedings, and had sought treatment. Her fiancé did have a better job waiting for him in Texas working for his father as an automobile repossessor. But her fiancé also testified he and his father had "butted heads" in the past and admitted to having convictions for driving while intoxicated, burglary of a vehicle, and evading arrest. After weighing all the statutory relocation factors on the record, the trial court denied Roberson's request to relocate. Roberson appeals.

## DISCUSSION

¶7 We review trial court decisions dealing with the welfare of children for abuse of discretion.[2] A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.[3] A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.[4] This means the court must base its decision on the correct standard and correctly apply that standard to facts, which in turn must be supported by the record.[5]

I. *Civil Rule 55*

¶8 Roberson contends the trial court should have allowed her to relocate by default because Pennamen did not file a timely objection as required by RCW 26.09.440(1). Roberson claims that RCW 26.09.500(1) mandates a default order permitting relocation when a person with notice fails

---

[2] *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

[3] *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

[4] *In re Marriage of Horner*, 151 Wn.2d 884, 894, 93 P.3d 124 (2004).

[5] *Id.*

to timely object. This is not entirely correct. RCW 26.09.500(1) states:

> Except for good cause shown, if a person entitled to object to the relocation of the child does not file an objection with the court within thirty days after receipt of the relocation notice, then the relocation of the child shall be permitted.

There are two grounds on which the commissioner could have ruled that Pennamen could be heard on the relocation issue: there was "good cause" to excuse the late filing or Pennamen informally appeared in the matter and cured his technical failure by filing his pleadings before the hearing in compliance with CR 55.

¶9 Pennamen argues the commissioner's decision to deny relocation by default was based on a finding that Pennamen's untimely filing was excused for "good cause." But there is nothing in the commissioner's order to indicate he found good cause. Pennamen misconstrues the meaning of "good cause" in the statute when he argues he was justified in filing late because of Roberson's drug use. This cannot be the basis for a good cause determination. Good cause refers to the reasons for the untimely party's late filing, not the reasons the court should rule in favor of that party's position. Good cause requires the late-filing party to show some external reason, not resulting from a self-created hardship, which prevented him from complying with the statutory requirements.[6] Pennamen has provided no such justification.

¶10 Although Pennamen failed to demonstrate good cause for his untimely filing, the commissioner appears to have allowed Pennamen to proceed because he complied with CR 55. CR 55(a)(2) provides in part:

> If the party has appeared before the motion is filed, he may respond to the pleading or otherwise defend at any time before the hearing on the motion.

---

[6] *State v. Johnson*, 96 Wn. App. 813, 817, 981 P.2d 25 (1999).

Thus, if a party has appeared, filing a responsive pleading before the hearing cures the default and allows the court to consider the merits of the case.

¶11 The civil rules apply to all civil superior court matters, including dissolution cases.[7] Default judgments are disfavored as a matter of policy.[8] As this court stated in *Batterman v. Red Lion Hotels, Inc.*, default judgments are normally appropriate only "when the adversary process has been halted because of an essentially unresponsive party."[9] We are particularly reluctant to reverse a trial court's decision not to enter a default judgment in the family law context where many parties are pro se, procedural errors are common, and the welfare of children is at stake. Because CR 55 applies to this case, the trial court was not required to allow relocation by default.

██ ██ ¶12 Here, the commissioner denied Roberson's motion for relocation by default under RCW 26.09.500(1) because "the objection to relocation although late does not automatically allow a move because the objection was filed within a reasonable time." By notifying Roberson of his objection, Pennamen informally appeared and invoked the protection of CR 55. Washington courts broadly construe the concept of appearance, focusing on whether the defending party has acted in a way that indicates to the moving party that he intends to defend.[10] Pennamen clearly objected to Roberson's plan to move the children to Texas and notified her by serving her with a proposed order on objection to relocation on July 1, 2005. Roberson was

---

[7] CR 1, CR 81, RCW 26.09.010(1). Appellant submitted a statement of additional authorities claiming that family law matters are not governed by the Civil Rules because they fall into CR 81's "special proceedings" exception. This is incorrect. Title 7 RCW deals with "special proceedings," and it does not mention family law matters. Special Proceedings Rules (SPR) governing divorce were rescinded in 1974. SPR 94.04W, SPR 94.05. The only procedural differences in the family law context are described in RCW 26.09.010 and do not apply here.

[8] *Colacurcio v. Burger*, 110 Wn. App. 488, 494, 41 P.3d 506 (2002), *review denied*, 148 Wn.2d 1003 (2003).

[9] 106 Wn. App. 54, 61, 21 P.3d 1174 (2001) (citing *Gage v. Boeing Co.*, 55 Wn. App. 157, 160-61, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989)).

[10] *Colacurcio*, 110 Wn. App. at 496 (citing *Batterman*, 106 Wn. App. at 61).

apparently aware that this unfiled objection was an informal appearance triggering CR 55 because she served Pennamen with notice of her motion for default as required by CR 55(3). On the same day Roberson moved for relocation by default, Pennamen filed his pleadings with the court. Under CR 55, Pennamen cured his untimely filing by responding before a hearing on the default motion.

¶13 Roberson urges us to ignore CR 55 and hold that RCW 26.09.500(1) imposes a strict requirement that the trial court allow relocation by default, without a hearing on the merits, whenever the objecting party fails to comply with the 30 day filing rule. She argues RCW 26.09.500(1)'s 30 day filing requirement should be treated as analogous to the strict procedural rules in the mandatory arbitration and appeals contexts.

¶14 But the procedural rules for objecting to relocation are more analogous to the rules for answering a complaint. CR 12(a)(1) requires a defendant to answer a complaint within 20 days. But failure to do so does not result in an automatic judgment for the plaintiff. The plaintiff must still move for a default judgment and, if the defendant complies with CR 55 by answering before the hearing, the court will still hear the case on the merits despite the untimely filing.[11]

¶15 Roberson cites *Heslop v. Sanderson*, a Missouri case with similar facts, as support for her position. In that case, the appellate court held the mother was entitled to relocate by default because the father was five days late filing his objection.[12] He believed that a timely motion to amend a prior motion to modify custody satisfied the statute.[13] *Heslop* is not particularly persuasive because it suggests the Missouri courts adhere to a procedural rigidity Washington rejects, as evidenced by CR 55 and the policy favoring

---

[11] *See Campbell v. Scannell*, 32 Wn. App. 346, 347-48, 647 P.2d 529 (1982).

[12] 123 S.W.3d 214, 220-21 (Mo. Ct. App. 2003).

[13] *Id.*

resolving cases on the merits reflected in *Colacurcio*[14] and *Batterman*.

¶16 There is also an important policy reason for holding that RCW 26.09.500(1) does not impose a strict jurisdictional requirement. In matters involving the welfare of children, courts need to be able to reach the merits whenever possible. The relocation statute, like other statutes dealing with the welfare of children, requires the court to consider the best interests of the child.[15] If we read RCW 26.09.500(1) as automatically allowing relocation by default even when the opposing party is attempting to object but does so in a way that is technically lacking, we would ignore the child's interests. For example, a strict reading would allow a parent to move a child into a dangerous situation involving drugs or abuse based on a technical procedural defect. We do not think the legislature intended such a draconian result when the objecting party complies with CR 55. The trial court did not abuse its discretion by hearing the relocation issue on its merits.

II. *Relocation Statute*

¶17 Roberson asserts the trial court improperly weighed the factors listed in the relocation statute and erred in finding the detrimental effects of the relocation outweighed any benefits to the children or Roberson. RCW 26.09.520 creates a rebuttable presumption in favor of allowing relocation, provided the detrimental effects of the relocation do not outweigh the benefits to the child or the relocating person. The statute requires the court to consider 11 unweighted factors in determining whether to approve relocation:

> (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

---

[14] *Colacurcio v. Burger*, 110 Wn. App. 488, 494, 41 P.3d 506 (2002), *review denied*, 148 Wn.2d 1003 (2003).

[15] RCW 26.09.002; *see also* RCW 26.09.520.

(2) Prior agreements of the parties;

(3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;

(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

(10) The financial impact and logistics of the relocation or its prevention; and

(11) For a temporary order, the amount of time before a final decision can be made at trial.[16]

¶18 A trial court abuses its discretion in making a relocation decision only if it fails to consider and balance each of the 11 relocation factors.[17] The decision about whether the detrimental effects of relocation outweigh the benefits to the child and the relocating parent is inherently subjective.[18] An appellate court may not substi-

---

[16] RCW 26.09.520.

[17] *Horner*, 151 Wn.2d at 895-96.

[18] *In re Marriage of Grigsby*, 112 Wn. App. 1, 14, 57 P.3d 1166 (2002).

tute its findings for those of the trial court where there is sufficient evidence in the record to support the trial court's determination.[19]

 ¶19 Here, the trial court considered each of the 11 relocation factors, determined which factors were applicable, and entered findings of fact related to those factors. Roberson argues the trial court improperly gave more weight to some factors than to others, particularly the parties' agreement in the parenting plan that the children would reside in King, Pierce, or Snohomish Counties and her history of methamphetamine use. She essentially asks this court to reweigh the factors and come out differently. We decline to do this.

¶20 Roberson argues that the court improperly considered the parties' parenting plan residence agreement because geographic restrictions are void as against public policy. This is a misstatement of the law. Roberson relies on *In re Marriage of Littlefield*, a Washington Supreme Court case holding that a trial court abused its discretion by ordering the mother to move back to Seattle from California.[20] *Littlefield* has little precedential value because it was expressly superseded by the legislature when it enacted the current relocation statute.[21] And *Littlefield* does not hold that all agreements involving geographic restrictions are void as against public policy. There, the court held that a prenuptial agreement governing where any future children might live was unenforceable because it could not have been entered into knowingly and voluntarily.[22] The court explicitly stated lower courts are required to consider agreements of the parties but are not bound by them in

---

[19] *In re Marriage of Kovacs*, 121 Wn.2d 795, 810, 854 P.2d 629 (1993).

[20] 133 Wn.2d 39, 59, 940 P.2d 1362 (1997), *superseded by* Laws of 2000, ch. 21, § 1.

[21] Laws of 2000, ch. 21, § 1.

[22] 133 Wn.2d at 58.

making relocation decisions.[23] The relocation statute incorporates this factor.[24]

¶21 Here, the trial court properly considered the parties' agreed parenting plan as it was required to do under RCW 26.09.520(2). The court found that Roberson freely and voluntarily signed the parenting plan, knowing that it placed a geographic restriction on the children and on her as their primary caretaker. The court considered the agreement as one factor among many and did not indicate that it was in any way bound to follow the 1999 parenting plan. There was no error.

¶22 Roberson contends the trial court placed undue emphasis on her history of drug use under RCW 26.09.520(4). She objects to the number of findings the court made about her drug use, particularly in contrast to the paucity of findings about the strength of the children's relationship with her. RCW 26.09.520(4) requires the court to consider whether either parent is subject to RCW 26.09.191 limitations, which include a long-term impairment resulting from drug abuse that interferes with the performance of parenting functions.[25] The legislature did not weight the relocation factors, but this does not preclude a court from focusing on the factors that are more relevant in a given case. Here, the court properly viewed the mother's history of methamphetamine use as relevant to the question whether the detrimental effects of the relocation outweighed the benefits. The court found Roberson lost her job in January 2005 because she refused to get treatment for her methamphetamine use and continued to use drugs until May 2005. During this time, she lost her apartment, moved the children from one hotel to the next, failed to find employment, and did not seek treatment until three weeks before trial on the relocation issue. While this was happening, she was dating and later married Cody Roberson.

---

[23] Id.

[24] RCW 26.09.520(2).

[25] RCW 26.09.191(3)(c).

There was ample evidence presented at trial to support these findings, including testimony from both Cody and Sandra Roberson. Given this evidence, it was not unreasonable for the trial court to conclude Roberson and her new husband might not be able to provide the kind of stability necessary to raise the two young boys. This is particularly true in light of the detrimental effects of the move, which involved taking the children away from their father, grandparents, and two younger half-brothers. The record supports the conclusion that the questionable stability and loss of family ties outweighed any benefit to the children or their mother from the proposed move. The trial court did not abuse its discretion when it focused in part on the mother's drug use to weigh the relocation factors.

## III. *Collateral Estoppel and Due Process*

¶23 Roberson contends collateral estoppel precluded the court from considering her methamphetamine use in denying her request for relocation. She argues the court had already decided the issue in her favor when it refused to revise the commissioner's finding that there was no nexus between her drug use and the statutory requirements for modifying the parenting plan. Collateral estoppel, or issue preclusion, prevents relitigation of the same issue in a later proceeding after an earlier opportunity to fully and fairly litigate the issue results in a final decision on the merits.[26] The party asserting collateral estoppel must prove four elements:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to ... the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.[27]

---

[26] *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004).

[27] *Id.*

¶24 Roberson's argument fails because the issues were not identical. The commissioner found no nexus between Roberson's drug use and the statutory requirements in RCW 26.09.260 for modification. In contrast, the trial court found there was a nexus between the mother's drug use and her ability to parent the children in the context of whether to allow relocation under RCW 26.09.520. These are two different issues. RCW 26.09.260 limits the circumstances in which a court may modify a parenting plan. The key issue for the commissioner was whether the children's present environment was so detrimental to their well-being that the benefit of a change in the parenting plan would outweigh the harm from moving the children out of the mother's home.[28] This is different from a relocation proceeding, where the key issue is whether the future detrimental effects of allowing relocation outweigh the benefits of the move.[29] In one case, the court is changing custody. In the other, custody remains the same. This is a significant difference.

¶25 The trial court was statutorily required to consider Roberson's past drug use during the relocation proceeding. One of the 11 factors the trial court must consider in making a relocation determination is whether any RCW 26.09.191 limitations apply.[30] The trial court determined Roberson's prior drug use fell into this category and weighed in favor of denying relocation because it contributed to the uncertainty that Roberson and her new husband would provide a stable environment for the children in the future. This is a different inquiry from the one the court must make when it takes the significant step of moving the children out of the home to which they are accustomed. The court properly considered Roberson's drug use in the relocation context even though it determined a major modification of the parenting plan was unnecessary unless she started using drugs again. The collateral estoppel doctrine does not apply to this issue.

[28] RCW 26.09.260(2)(c).

[29] RCW 26.09.520.

[30] RCW 26.09.520(4).

¶26 Roberson also argues the trial court denied her due process of law by considering her prior drug use as a RCW 26.09.191 limitation under RCW 26.09.520(4). Roberson characterizes this as "in effect, a motion to modify the parenting plan and impose [RCW 26.09].191 conditions for the first time during a relocation hearing" without proper notice. This mischaracterizes the court's decision, and Roberson's due process argument is without merit. First, Roberson had adequate notice that the court would consider her drug use because Pennamen repeatedly raised the issue as part of his objection to relocation. Second, the relocation statute, RCW 26-.09.520(4), explicitly requires the court to determine whether any RCW 26.09.191 limitations exist. Third, the court did not restrict Roberson's parenting functions as it would have had to were it making a custody decision. Instead, the court ordered that the 1999 parenting plan, establishing Roberson as the primary residential parent, remain in effect. There was no due process violation.

## IV. *Attorney Fees on Appeal*

¶27 Pennamen argues he should be awarded attorney fees under RAP 18.1 because of Roberson's intransigence. A court may award one party attorney fees based on the other party's intransigence if the other party engages in foot-dragging and obstruction.[31] The party requesting fees for intransigence must show the other party acted in a way that made trial more difficult and increased legal costs, like repeatedly filing unnecessary motions or forcing court hearings for matters that should have been handled without litigation.[32] There is no evidence that Roberson has been intransigent. We deny Pennamen's request for attorney fees.

¶28 Roberson requests attorney fees and costs based on financial need under RCW 26.09.140. That provision grants the court discretion to award attorney fees to

---

[31] *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002 (1992).

[32] *Id.* at 708-09.

either party based on the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay.[33] Looking at both parties' affidavits of financial need, it is clear that neither can afford to pay the other's fees. In fact, both parties have sought and received financial assistance from their families to pay for this litigation. An award of fees to either side would only serve to further burden their respective families. We deny both parties' requests for attorney fees.

¶29 We affirm the trial court's decision to deny relocation and deny both parties' requests for attorney fees on appeal.

SCHINDLER, A.C.J., and BECKER, J., concur.

---

[33] *In re Marriage of Wilson*, 117 Wn. App. 40, 51, 68 P.3d 1121 (2003).