**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMANDA R. COWAN,<br><br>     Respondent,<br><br>v.<br><br>JOSHUA T. COWAN,<br><br>     Appellant. | No. 83082-1-I<br>(Consolidated with<br>No. 83860-1-I and<br>No. 84148-3-I)<br><br>DIVISION ONE<br><br>ORDER WITHDRAWING AND<br>SUBSTITUTING OPINION |

The panel having determined that the opinion should be withdrawn and substituted, it is hereby

ORDERED that the opinion of this court in the above-entitled case filed August 28, 2023 be changed as follows.

Page 20, line 3 shall be changed to: A court abuses its discretion when it does not follow the statutory procedures or modifies a parenting plan for reasons other than the statutory criteria.

The remainder of the opinion shall remain the same.

_____
Coburn, J.

_____
Birk, J.

_____
Smith, C.J.

FILED
12/26/2023
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMANDA R. COWAN,<br><br>          Respondent,<br><br>v.<br><br>JOSHUA T. COWAN,<br><br>          Appellant. | No. 83082-1-I<br>(Consolidated with<br>No. 83860-1-I and<br>No. 84148-3-I)<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

COBURN, J. — A mother obtained a one-year Domestic Violence Protection Order (DVPO) against the father following a spanking incident of one of their children. Neither parent petitioned to modify their then-existing parenting plan. At a later relocation trial, the court granted the mother's requests to preclude the father from introducing any evidence challenging the spanking incident while also imposing mandatory conditions against the father that mirrored those from the DVPO. The court granted the relocation and considered the father's abusive use of conflict but not the spanking incident in its consideration of relocation factors. The father appeals both the trial court's order on relocation and modification of the parenting plan.

We hold that a DVPO is not the type of "court order" contemplated by RCW

26.09.525(2) to determine whether the presumption in favor of relocation applies.  The trial court also abused its discretion in precluding the father, under res judicata, collateral estoppel, and law of the case from introducing evidence challenging the spanking incident in the relocation trial.  Because the errors were harmless as to the relocation order, we affirm the trial court granting the mother's request to relocate the children.  However, because the court modified the parenting plan beyond what is permitted pursuant to a relocation, we reverse that order.  The current residential schedule will remain until the trial court can enter a parenting plan consistent with this opinion on remand.

FACTS and PROCEDURAL HISTORY

In 2019, Joshua and Amanda Cowan separated after being married for 10 years.  A court entered an agreed permanent parenting plan in 2020 ordering equally sharing residential time with their three children.[1]  The order provided,

> Both parents will have equal 50/50 share custody of the children.  While the parenting time calendar is not an equal time share schedule, both parents have agreed that this is what makes the most sense for the children for the foreseeable future so one parent can work full time while the other parent is the primary caregiver.  If either parent decides that they would like to petition the court to change the schedule, they should be granted up to 50% of the children's time per this agreement.  At all times, the parent that has the children will be the primary caregiver.  Outside of vacations, neither parent will have a significant other taking care of the children except with one-off, extenuating circumstances that do not extend overnight.

The agreed parenting time calendar provided that the children were with Amanda[2] 16 out of 28 nights, or approximately 57 percent of the residential time.

---

[1] Joshua asserts the parenting plan was entered at the same time as the agreed dissolution of the marriage.  The order of dissolution is not in the record.

[2] Because the parties share the same last name, we refer to them by their first name for clarity.

83082-1-I/3

In April 2021, under a separate cause number, Amanda filed for a domestic violence protection order (DVPO) against Joshua based on a March 15 event. She recalled that the children came home from a weekend with Joshua. When she was giving her 2-year-old daughter, E.C., a bath, she noticed severe bruising on her hip and thigh. Amanda called Joshua and he explained he had to "spank her" repeatedly because she was not obeying him and kept getting out of bed. Amanda sent a picture of the bruising to her pediatrician, who contacted Child Protective Services (CPS). CPS then contacted the police. The court entered a temporary DVPO, prohibiting contact between Joshua and the children.

In May, Amanda filed a notice of intent to move the children to St. George, Utah. She provided the reasons for the move: (1) to provide a better environment for her children; (2) she could no longer afford to live in the greater Seattle area; (3) she had a job offer in St. George; and (4) she could afford a new townhome in St. George. In the attached proposed parenting plan, Amanda requested the court prohibit Joshua from having any contact with the children pending the outcome of the CPS and police investigation from the spanking incident. Amanda also requested Joshua be evaluated for substance abuse and anger management and/or domestic violence, that he start and comply with treatment as recommended by the evaluation, that he provide a copy of the evaluation and compliance reports, and that his residential time be suspended for noncompliance.

Amanda planned to move in August. She indicated that she planned to reside with her parents in Union, Washington, in between selling her home in King County and moving to Utah.

3

Joshua filed a motion for a temporary order preventing the move with the children. The court heard his motion on July 15. At the hearing, the court learned that Amanda had already moved with the children out of King County to Union. Amanda conceded that she "jumped the gun" and moved without permission of the court, but explained that the children were not in school and Joshua could not have contact with the children because of the temporary DVPO. Joshua asked the court to order the children to be brought back to King County and that Amanda reside there until the relocation issue was resolved. The court explained that it had no authority to order Amanda to live in King County, and though it could order the children be returned to King County, they would not be able to reside with Joshua because of the temporary DVPO. The court explained that the only reasonable temporary order that the court could impose given the unusual circumstance was to order Amanda not to leave the state of Washington with the children on a permanent basis. The parties agreed.[3] At this hearing Amanda declined to have the DVPO matter and the relocation matter consolidated.

At the July 21 hearing on the DVPO, a trial court commissioner found that Joshua's excessive corporal punishment of E.C. constituted domestic violence. The commissioner explained that although corporal punishment is legal in Washington, excessive corporal punishment is not. The court issued a DVPO that expired July 21, 2022. The commissioner limited Joshua's contact with his children by prohibiting any overnight visits, but otherwise allowed contact as permitted by the then-existing parenting plan schedule. The commissioner also ordered Joshua either participate in a

---

[3] Joshua does not appeal the court's ruling from the July 15 hearing.

domestic violence perpetrator treatment program or obtain a domestic violence assessment and comply with its recommendation. The same day, Joshua filed a motion for revision of the DVPO, and the court denied it. Joshua filed a notice of appeal of that decision (the first of three consolidated appeals).

In August, Amanda filed an amended notice of intent to move the children to Utah with an attached proposed parenting plan. She revised her reasons for moving to be: (1) providing a better environment for the children; (2) moving to Mapleton, Utah to marry her new fiancé; and (3) moving will allow her to cease working outside the home and be available for the children. In her attached proposed parenting plan, she requested that all residential time with Joshua be professionally supervised at his expense. She maintained her previous evaluation and treatment requests. Joshua filed an amended objection to Amanda's request to relocate. Neither she nor Joshua filed a petition to modify the parenting plan.

Joshua moved to vacate the DVPO under CR 60(b). The court denied the motion in March 2022. Joshua filed a notice to appeal that decision (the second of his three consolidated appeals).

In April, the court held a five-day trial regarding the mother's request to relocate the children to Utah. Amanda attached the DVPO to her trial brief and requested the court place RCW 26.09.191 findings and limitations on Joshua and order the same conditions required by the DVPO.[4] Joshua asserted in his trial brief that he intended to contest any allegation of child abuse and that he intended to introduce evidence to

---

[4] Amanda also requested RCW 26.09.191 limitations imposed on Joshua for alleged acts of domestic violence and sexual abuse against Amanda. However, the trial court found that Amanda failed to prove by a preponderance of the evidence that there was a history of acts of domestic violence against her. Amanda did not appeal this ruling.

5

dispute that claim. Specifically, Joshua offered that Dr. Carl Wigren, a forensic pathologist, would testify regarding the lack of evidence of physical abuse and the deficient criminal and CPS investigation. Joshua would also be calling Dr. Marsha Hedrick to testify regarding Amanda's influence on the children's forensic interviews and their lack of credibility.

Amanda moved in limine for the court to preclude Joshua from introducing any evidence related to the excessive spanking incident. Amanda argued under res judicata that Joshua should not be able to relitigate this issue. Amanda asserted that the DVPO should stand on its own and that she should be able to rely on it at trial. The court granted the motion, ruling that it would accept the DVPO finding under res judicata (claim preclusion), collateral estoppel (issue preclusion), and "the law of the case." The court excluded Wigren's testimony explaining that it was not going to allow Joshua to "relitigate" the DVPO, and that it accepted the previous DVPO finding that an assault had occurred because it had "already been proven as the law of the case." The court allowed Hedrick to testify about how the relocation might affect the children, but prohibited any testimony "about whether the assault happened, how the assault might effect [sic] the children." The court clarified, however, that while it accepted the fact that Joshua excessively spanked E.C., how that fact would weigh into the court's consideration of RCW 26.09.191 limitations was a matter of the court's broad discretion.

During the court's ruling, it stated it needed to first decide if there were going to be RCW 26.09.191 limitations in a new parenting plan before considering the 11 relocation factors under RCW 26.09.520. The court explained that RCW 26.09.191(n) provides that the weight to be given to a DVPO is within the court's discretion. The

6

court denied RCW 26.09.191 limitations based on Amanda's allegations that Joshua was domestically violent with her. The court acknowledged that the over-spanking of E.C. occurred but used its discretion to not limit residential time under RCW 26.09.191(2)(n). The court, however, found that Amanda proved that Joshua abusively used conflict because Joshua indicated he wanted to exchange the children at 4 a.m. for retaliatory reasons.

The court then considered whether the rebuttable presumption permitting relocation under RCW 26.09.520 applied in analyzing the required 11 factors. Because the presumption did not apply if 45 percent or more of the child's residential time is spent with each parent, the court considered, among other factors, the "determination on the amount of time designated in *the court order*" as required under RCW 26.09.525(2) (emphasis added). The parties disputed at trial whether the court should consider the designated time in the parenting plan or how the schedule changed under the DVPO.

The court explained what it viewed as three options. The court stated it could consider the residential schedule designated under the DVPO. It could also consider the parenting plan residential schedule and find that it had not been significantly modified, or it could consider the parenting plan as having been modified by the DVPO. Under any of the scenarios, the court concluded a presumption supporting relocation applied because the children spent more than 45 percent of their time with their mother. The court determined that the DVPO was the controlling court order under RCW 26.09.525. The court reasoned that the DVPO order fell within the definition of "court order" under RCW 26.09.410, and the DVPO contained a schedule that was the "most

recent order." Under the restrictions of the DVPO, the children spent more than 55 percent of their time with their mother.

The court then analyzed the 11 relocation factors under RCW 26.09.520.[5] It found that factor 1, the nature of the children's relationship, significantly favored relocation because Amanda was more involved with the children, was more nurturing, and had a stronger relationship with them that is of higher quality. It found that factor 2, prior agreements, was a neutral factor because the court rejected Joshua's argument that the parties had moved to a 50/50 parenting schedule. It found that factor 3, disrupting contact between the children with either parent, heavily favored relocation for the same reasoning as in factor 1. The court then considered factor 4:

> I next must consider whether either parent is subject to limitations under [RCW] 26.09.191. And here if I allow relocation, there will be a finding of

---

[5] The 11 factors under RCW 26.09.520 are the following:
(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
(2) Prior agreements of the parties;
(3) Whether disrupting the contact between the child and the person seeking relocation would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
(10) The financial impact and logistics of the relocation or its prevention; and
(11) For a temporary order, the amount of time before a final decision can be made at trial.

abusive use of conflict against the father, and I am considering that. But frankly, I don't find that that is a determinative factor.

The court found that the RCW 26.09.191 limitation was largely remedied by the conditions the court placed on the father. The court found that this factor slightly favored Amanda's position.

The court then analyzed factor 5, reasons for proposing or opposing relocation. It found that this factor slightly favored Joshua's opposition because both parents were acting in good faith, and the move would negatively impact Joshua's relationship with the children. It noted that in the first notice of relocation, Amanda moved the children in violation of the law by moving the children to a different school district. It found that factor 6, the effect of the relocation on the children, slightly disfavored relocation because the move would disrupt the relationship with Joshua and their grandparents on both sides of the family. It found that factor 7, quality of life available to the children and Amanda, significantly favored relocation because the move would improve Amanda's quality of life romantically, personally, and interpersonally. It found that factor 8, the availability of alternative arrangements, favored Joshua despite the availability of travel, video calling, and extended summer visits. It found that factor 9, whether the objecting person can also move, slightly disfavored relocation because it was not feasible for Joshua to relocate. It found that factor 10, financial impacts of the relocation, was neutral because there were no financial impacts either way. It found that factor 11, regarding the amount of time before trial, was not applicable because the parties had already been through trial.

The court granted Amanda's request to relocate with the children. The court explained the outcome would have been the same if it considered the residential time

designated in the parenting plan rather than the DVPO. The court also explained that the factors would still have supported relocation even if Amanda was not afforded the presumption to relocate.

The court also entered a modified parenting plan. In it, the court noted there were two reasons supporting limitations on Joshua under RCW 26.09.191:

> a. Abandonment, neglect, child abuse, domestic violence, assault, or sex offense.
>
> A parent has one or more of these problems as follows:
>
>> Child Abuse - Joshua Cowan (or someone living in that parent's home) abused or threatened to abuse a child. The abuse was: physical.
>
> b. Other problems that may harm the children's best interests:
>
> A parent has one or more of these problems as follows:
>
>> Abusive use of conflict - Joshua Cowan uses conflict in a way that may cause serious damage to the psychological development of a child. . . .

However, consistent with its oral ruling, the court added that it was not imposing RCW 26.09.191(2)(a) residential time limitations by exercising its discretion under RCW 26.09.191(2)(n):

> Under RCW 26.09.191(2)(n), the Court expressly finds that based on significant evidence presented at trial that continued contact between the father and the children will not cause physical harm to the children and that the probability that the father's harmful or abusive conduct to the children will recur in the future is so remote that it is not in the interests of the children to apply the limitations in RCW 26.09.191(2)(a).

Nevertheless, the court ordered compliance with the DVPO that was set to expire on July 21, 2022, as well as adopted conditions that were first imposed under the DVPO: completing a domestic violence assessment and complying with all recommendations,

completing "DV Dads," not using corporal punishment on his children, and using Talking Parents[6] to communicate with Amanda. The court also ordered Joshua not to drink alcohol during his residential time or within 12 hours of seeing the children. The court provided that if Joshua did not follow the treatment requirements or if he violated the conditions upon him, then his residential time would be suspended.

Joshua appeals the final orders entered in his child relocation case. A commissioner of this court granted Joshua's motion to consolidate all three of his appeals. In total, Joshua appeals the July 21, 2021 DVPO, the denial of his motion for revision of that order, the denial of his motion to vacate that order, and the 2022 relocation order and modified parenting plan entered after trial.[7]

## DISCUSSION

### Parenting Plan Modification

Joshua first contends that the trial court abused its discretion by excluding, based on res judicata or collateral estoppel, Joshua's expert testimony evidence rebutting the DVPO finding that he excessively spanked the child. We agree.

We review evidentiary rulings for abuse of discretion. Hollins v. Zbaraschuk, 200 Wn. App. 578, 580, 402 P.3d 907 (2017). A trial court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775

---

[6] Talking Parents is an application that will create a record of all communication between parents.

[7] Though Joshua assigns error to the entry of the DVPO, order denying his motion for revision, and order denying his motion to vacate, he does not provide substantive argument as to why these orders were improper. Thus, we do not address these claims. RAP 10.3(a)(6) (requiring an appellant's brief to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); see also Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 845, 347 P.3d 487 (2015).

83082-1-I/12

(1971). However, whether the court used the correct legal standard is a question of law reviewed de novo. Dix v. ICT Grp., Inc., 160 Wn.2d 826, 833-34, 161 P.3d 1016 (2007).

The court excluded evidence of the excessive spanking incident on collateral estoppel, res judicata, and law of the case doctrine.[8] The court explained,

> The DVPO is on appeal. And here the mother alleges that the issue of that assault and what happened, that is alleged in the DVPO having been found, is collateral estoppel or res judicata.
>
> The laws of the State [of] Washington are quite clear that just because that issue is on appeal, the DVPO, does not affect its finality in terms of this hearing. What the court of appeals and the supreme court have said over and over is it is something that is subject to the collateral estoppel analysis.
>
> . . .
>
> In the DVPO you had the same parties, the same standard of proof, and there was a finding of fact that we're not going to relitigate the DVPO. That is the fact that the Court just accepts that there was a finding of an assault.

The court further explained that what it chose to do with the assault finding was up to its discretion. Joshua contends that although the trial court and parties used the term res judicata, the issue is more correctly analyzed under the doctrine of collateral estoppel. We agree.

The doctrine of res judicata, or claim preclusion, ensures that "every party should be afforded one, but not more than one, fair adjudication of his or her claim" by

---

[8] The parties spend little effort addressing whether "law of the case" was a proper basis to preclude Joshua's evidence. As this court has explained, "'The term 'law of the case' means different things in different circumstances. First, it refers to the effect of jury instructions in a trial. Second, it refers to the binding effect of appellate determinations on remand. Third, it refers to the principle that an appellate court will generally not reconsider the rules of law it announced in a prior determination of the same case." Bergerson v. Zurbano, 6 Wn. App. 2d 912, 925, 432 P.3d 850 (2018) (citations omitted). The trial court erred in suggesting the law of the case doctrine supported the court's ruling.

12

prohibiting the re-litigation of claims that were litigated or could have been litigated in a prior action. Reeves v. Mason County, 22 Wn. App. 2d 99, 115, 509 P.3d 859 (2022). Here, Amanda filed the motion to relocate, not Joshua. It was Amanda who requested RCW 26.09.191 limitations and modification of the parenting plan as part of the relocation trial. Joshua simply objected to Amanda's requests.

Collateral estoppel, or issue preclusion, bars re-litigation of the same issue in a later proceeding after an earlier opportunity to fully and fairly litigate the issue results in a final decision on the merits. Marriage of Pennamen, 135 Wn. App. 790, 805, 146 P.3d 466 (2006). The party asserting collateral estoppel must prove four elements: (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. Id. "Collateral estoppel does not apply when a substantial difference in applicable legal standards differentiates otherwise identical issues even though the factual setting of both suits is the same." Reeves, 22 Wn. App. 2d at 112 (citing Cloud v. Summers, 98 Wn. App. 724, 730, 991 P.2d 1169 (1999)).

Joshua challenges the court's ruling based on the first factor, arguing the issue decided in the DVPO was not identical to the issue presented in relocation proceeding because the procedures and purposes of the proceedings were significantly different. We agree. For support, Joshua cites to Regan v. McLachlan, 163 Wn. App. 171, 181, 257 P.3d 1122 (2011) (holding that the issue in a prior criminal proceeding, whether the trial court had jurisdiction, was not identical to the issue in the present civil proceeding,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

83082-1-I/14

whether the defendant was negligent and breached its fiduciary duty), and Standlee v. Smith, 83 Wn.2d 405, 518 P.2d 721 (1974) (holding that a parolee's acquittal on criminal charges did not, on the basis of collateral estoppel, preclude parole revocation based on the same charges).

Also informative is Pennamen. There, the parties' marriage was formally dissolved in 1999 and the court entered a parenting plan at the time of dissolution. 135 Wn. App. at 795. In 2005, the mother requested to relocate the children. The father separately filed a petition for modification of the parenting plan alleging that the mother and her fiancé were methamphetamine users, and that the fiancé had a history of domestic violence and may have abused her and the children. Id. at 796. In response, the mother got a urinalysis (UA) drug test, tested negative for all substances, and filed the results of the UA with her reply to the father's motions. Id. A commissioner denied the father's petition for modification of the parenting plan, ruling that there was "no nexus" between the mother's prior drug use and the statutory requirements for modification under RCW 26.09.260. Id. The trial court dismissed the father's motion for revision of the commissioner's decision. Id.

Later at the relocation trial, the mother contended collateral estoppel precluded the court from considering her past drug use. She argued that because that issue had already been decided in her favor when the trial court refused to revise the commissioner's finding, there was no nexus between her drug use and the statutory requirements for modifying the parenting plan. Id. at 805. This court held that it was not improper for the trial court to consider the mother's past drug use during the relocation hearing as it must have done under RCW 26.09.520(4), which requires the court to

14

consider whether any RCW 26.09.191 limitations apply. Id. at 806. We explained that the mother's collateral estoppel argument failed because the issues were not identical. Id. We noted that RCW 26.09.260 limits the circumstances in which a court may modify a parenting plan and that "the key issue for the commissioner was whether the children's present environment was so detrimental to their well-being that the benefit of a change in the parenting plan would outweigh the harm from moving the children out of the mother's home." Id. Further, we explained, "This is different from a relocation proceeding, where the key issue is whether the future detrimental effects of allowing relocation outweigh the benefits of the move." Id.

Pennamen is similar to the instant case in that the issues presented in the two different hearings are not the same issue. A DVPO proceeding is different from a relocation proceeding substantively and procedurally.

The purpose of chapter 26.50 RCW, Domestic Violence Prevention Act, is to provide a process by which victims of domestic violence may obtain orders of protection more efficiently and easily than court orders are generally obtained. Smith v. Smith, 1 Wn. App. 2d 122, 135, 404 P.3d 101 (2017); Marriage of Barone, 100 Wn. App. 241, 247, 996 P.2d 654 (2000). "Conversely, it is relatively difficult to obtain orders that modify final parenting plans and child support decrees." Id. "Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification." Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

DVPO proceedings allow courts to consider hearsay in a chapter 26.50 RCW protection order proceeding. Gourley v. Gourley, 158 Wn.2d 460, 464, 145 P.3d 1185

15

(2006); ER 1101(c)(4).  Whereas, hearsay is not admissible, absent an exception, in a trial modifying a parenting plan.  DeVogel v. Padilla, 22 Wn. App. 2d 39, 59, 509 P.3d 832 (2022).  When modifying a parenting plan, The Parenting Act anticipates that the court will craft a child's permanent residential schedule based on the best interests of the child, as they can be determined at the time of trial.  Marriage of Abbess, 23 Wn. App. 2d 479, 485, 516 P.3d 443 (2022) (citation omitted).  To impose new RCW 26.09.191 limitations in a parenting plan, the court is required to apply the "civil rules of evidence, proof, and procedure."  RCW 26.09.191.

A permanent parenting plan may be changed by an agreement, by petition to modify, and by temporary order.  Marriage of Watson, 132 Wn. App. 222, 235, 130 P.3d 915 (2006).  A trial court may not modify a parenting plan unless it finds, upon the basis of facts that have arisen since the prior parenting plan or that were unknown to the trial court at the time of the parenting plan, that a "substantial change in circumstances" has occurred.  RCW 26.09.260(1).  Additionally, under RCW 26.09.260(6),

> The court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child. The person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan, including a change of the residence in which the child resides the majority of the time, without a showing of adequate cause other than the proposed relocation itself. A hearing to determine adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued. In making a determination of a modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in RCW 26.09.405 through 26.09.560. Following that determination, the court shall determine what modification pursuant to relocation should be made, if any, to the parenting plan or custody order or visitation order.

A court may not allow a DVPO to serve as a de facto modification of a parenting plan. Watson, 132 Wn. App. at 234 (citing Barone, 100 Wn. App. at 247).

Thus, parties may petition to modify a parenting plan when there has been a substantial change in circumstances or the person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan. Even when neither party petitions to modify the parenting plan, a "court order permitting or restraining the relocation of a child may necessitate modification of an existing parenting plan." Marriage of Laidlaw, 2 Wn. App. 2d 381, 387, 409 P.3d 1184 (2018). However, the modification must be "pursuant to relocation." "Relocations involve new time and distance factors that will inevitably require dramatic changes to a parenting plan . . . . A trial court decision is not based on untenable grounds simply because it favors one parent against another." Marriage of Fahey, 164 Wn. App. 42, 68, 262 P.3d 128 (2011).

Neither party petitioned to modify the parenting plan. The only issue at trial, as articulated in Pennamen, was "whether the future detrimental effects of allowing relocation outweigh the benefits of the move." This is not the same issue as whether a court should enter a temporary protection order. Certainly, as we observed in Pennamen, the court could have considered the spanking incident as part of its consideration of the required factors under RCW 26.09.520(4) as to the issue of relocation, which means Joshua had the right to contest the issue. The trial court abused its discretion in its misapplication of res judicata, collateral estoppel, and law of the case to bar Joshua's evidence related to the spanking incident.

17

As this court recognized in Laidlaw, a relocation order necessitates some modification of a parenting plan because relocations involve new time and distance factors that will inevitably require dramatic changes to that plan. Laidlaw, 2 Wn. App. 2d at 387. However, those changes must be "pursuant to relocation." RCW 26.09.260(6). A trial court abuses its discretion when it orders restrictions under RCW 26.09.191 based on the adverse effects of its own temporary orders. Watson, 132 Wn. App. at 235.

In her response brief, Amanda maintained that the final parenting plan entered after the order to relocate does not include RCW 26.09.191 limitations based on domestic violence. At oral argument, she argued that a relocation is adequate cause to modify a parenting plan citing Laidlaw, Marriage of Raskob, 183 Wn. App. 503, 334 P.3d 30 (2014), and Marriage of McDevitt, 181 Wn. App. 765, 326 P.3d 865 (2014). Wash. Court of Appeals oral argument, Marriage of Cowan, No. 83082-1-I (June 6, 2023), at 12 min., 20 sec., *video recording by* TVW, Washington State's Public Affairs network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2023061164. However, in these cases, the court only altered residential aspects related to the relocation order. In Laidlaw, the court modified the parenting plan pursuant to the relocation action by reducing the father's residential time during the school year based on a DVPO. 2 Wn. App. at 389. In McDevitt, the court entered a modified parenting plan pursuant to relocation resulting in more equal visitation and sharing of parental responsibility. 181 Wn. App. at 773. In Raskob, the court entered a modified parenting plan entering a provision requiring the mother to provide the father with notice if she

18

83082-1-I/19

decided to relocate outside of the child's school boundaries—which constitutes as a residential aspect. 183 Wn. App. at 516. These cases are inapposite.

Here, the trial court announced that it was exercising its discretion under RCW 26.09.191(2)(n) to not limit residential time under RCW 26.09.191(2)(a) because of physical abuse of a child. The court explained,

> I find that the – there has been evidence presented, significant evidence that continued contact between the father and the children will not cause physical harm to the children, and that the probability of the parent's harmful or abusive conduct will recur is so remote that it would not be in the children's best interests to apply the limitations of subsection [RCW 26.09.191](a). So while I do find that that happened, and that there was an assault, I find that there are no limitations that are necessary, other than those that I'm going to put in this order . . . .

The court then proceeded to impose the following conditions:

- The father must comply with all terms of the DVPO.
- The father shall complete domestic violence assessment at a state certified agency within 30 days of today's date, unless such an assessment was previously completed for the DVPO, and also timely follow all recommendations of the assessor.
- The father shall complete DV Dads and commence DV Dads within 30 days after completing the recommendations of the assessor, or sooner if his DV batterer's counselor indicates he can start DV Dads earlier.
- The father shall not use corporal punishment on his children at any time.
- The father shall not drink alcohol or use any mind-altering substances within 12 hours of any of his residential time and shall not drink any alcohol or use any mind-altering substances during his residential time.
- The father must abide by the restrictions on communications with the mother in Section 14 of this Parenting Plan (Talking Parents, appropriate child focused communication, etc.)

> If the father does not follow the treatment requirements above or violates any of the conditions imposed on him within this Order, then the father's residential time with his children is suspended pending further order of the court.

The court did not merely modify "residential aspects" as contemplated by RCW 26.09.260(6). Instead, the court imposed limitations on Joshua's residential time that

19

was tied to completion of conditions imposed based on the existence of a DVPO that Joshua could not contest at trial. A court abuses its discretion when it does not follow the statutory procedures or modifies a parenting plan for reasons other than the statutory criteria. Watson, 132 Wn. App. at 230.

In light of the above, we reverse the parenting plan order entered following trial. However, because we affirm the relocation order as discussed below, the residential schedule shall remain until the trial court can enter a parenting plan consistent with this opinion on remand.

Order Granting Relocation

Joshua contends that the trial court improperly analyzed two of the relocation factors. We disagree.

The RCW 26.09.520 factors to be considered in determining whether the harm of a proposed relocation outweighs its benefits are not weighted or listed in any particular order. Abbess, 23 Wn. App. 2d at 486. Joshua only challenges the court's analyses of factors 4 and 7.

Under factor 4, Joshua contends that the trial court lacked statutory authority to contemplate new RCW 26.09.191 restrictions during its analysis of whether to allow the relocation of a child.

We will only reverse a trial court's order permitting relocation of children upon a finding of manifest abuse of discretion. Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). A trial court abuses its discretion if its decision is based on untenable grounds or reasons. Id. (citing State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

RCW 26.09.191 restrictions limit a parent's residential time with a child, including physical abuse of the child and abuse of conflict that psychologically harms the child. RCW 26.09.191(2)(a), (3)(e).

The fourth relocation factor provides that the court must consider "[w]hether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191." RCW 26.09.520(4). Joshua argues that "is subject to" means that the court must consider only RCW 26.09.191 limitations currently in place per the existing parenting plan, not future RCW 26.09.191 restrictions in a modified parenting plan. We disagree.

As previously discussed, this court in <u>Pennamen</u>, held that where "RCW 26.09.520(4) requires the court to consider whether either parent is subject to RCW 26.09.191 limitations, which include a long-term impairment resulting from drug abuse that interferes with the performance of parenting functions," the trial court "properly viewed the mother's history of methamphetamine use as relevant to the question whether the detrimental effects of the relocation outweighed the benefits" when considering factor 4. 135 Wn. App. at 804. Nothing in that case suggested that a court had previously imposed RCW 26.09.191 limitations against the mother. This court rejected the mother's argument that the mere consideration of the existence of RCW 26.09.191 limitations under RCW 26.09.520(4) equated to a modification of the parenting plan. <u>Id.</u> at 807.

While it was not improper for the trial court to consider the spanking incident, as discussed above, it was improper for the trial court to bar Joshua from admitting

evidence as to that issue. However, as Joshua conceded during oral argument,[9] the trial court did not base its relocation decision on the spanking incident. The court explained that "there has been evidence presented, significant evidence that continued contact between the father and the children will not cause physical harm to the children, and that the probability of the parent's harmful or abusive conduct will recur is so remote that it would not be in the children's best interests to apply the limitations of subsection [RCW 26.09.191](a)." When the trial court considered factor 4, it explained:

> I next must consider whether either parent is subject to limitations under [RCW] 26.09.191. And here if I allow relocation, there will be a finding of abusive use of conflict against the father, and I am considering that. But frankly, I don't find that that is a determinative factor.

Under Pennamen, the trial court was able to consider the abusive use of conflict limitation when considering factor 4 of the relocation factors. Notably, Joshua does not challenge insufficient evidence supported the court's determination of the abusive use of conflict. The court did not abuse its discretion by considering the RCW 26.09.191 limitation in its analysis while making its relocation determination.

Joshua also contends that the trial court incorrectly analyzed factor 7, comparing the current and proposed geographic locations. The court analyzed the differences between the intended residence in Mapleton, Utah, and the children's then-current temporary residence in Amanda's parents' home in Union, Washington. Amanda had sold her previous home in Maple Valley and did not live there at the time of trial. Joshua argues, without any supporting authority, that because Amanda moved the children to Union without authority of the court, the court should have compared the

---

[9] Wash. Court of Appeals oral argument, Marriage of Cowan, No. 83082-1-I (June 6, 2023), at 4 min., 23 sec., *video recording by* TVW, Washington State's Public Affairs network, https://tvw.org/video/division-1-court-of-appeals-2023061164.

children's prior residence in King County instead of Union. Factor 7 expressly requires the court to consider the *"current* and proposed geographic locations." RCW 26.09.520(7) (emphasis added). The court did not abuse its discretion in analyzing factor 7.

Presumption

Lastly, Joshua contends that the trial court erred in its application of the presumption in favor of relocation because the DVPO residential schedule should not have been considered as it is not an "order" contemplated by RCW 26.09.410(1). We agree.

The Child Relocation Act (CRA) "governs the process for relocating the primary residence of a child who is the subject of a court order for residential time." Abbess, 23 Wn. App. 2d at 485-86 (citing Marriage of McNaught, 189 Wn. App. 545, 553, 359 P.3d 811 (2015)). The CRA creates a rebuttable presumption that the intended relocation for the child will be permitted when the relocating parent enjoys the majority of the children's time. Id. at 487 (citing RCW 26.09.520; McNaught, 189 Wn. App. at 553). The challenging parent, here Joshua, may rebut the presumption by demonstrating by a preponderance of the evidence that the detrimental effect of the relocation outweighs the benefit of the child and the relocating person. Id. (citing RCW 26.09.520; McNaught, 189 Wn. App. at 553-54). If both parents have "substantially equal residential time," the presumption favoring relocation does not apply. Abbess, 23 Wn. App. 2d at 487. "Substantially equal residential time" includes any arrangement in which the child spends 45 percent or more of the time with each parent. Id. (citing RCW 26.09.525(2)). Generally, the court determines whether the parties have substantially

23

equal residential time based on "the amount of time designated in the court order." Id. (citing RCW 26.09.525(2)(b)).

The trial court considered the DVPO as the determinative "court order" that governed the children's residential time and supported the application of the rebuttable presumption in favor of relocation. However, as observed by the trial court, even if the parenting plan was the proper "court order," the rebuttable presumption would still favor relocation because Amanda had custody of the children 57 percent of the time, and thus Joshua only had 43 percent custody—lower than the 45 percent threshold. We nevertheless take this opportunity to hold that the "order" as contemplated in RCW 26.09.525(2)(b) cannot be an order that is not otherwise defined in RCW 26.09.410(1).

When interpreting a statute, we first look to its plain language. HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)). "'Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself.'" Id. (quoting Human Rights Comm'n v. Cheney Sch. Dist. No. 30, 97 Wn.2d 118, 121, 641 P.2d 163 (1982)).

A "'Court order' means a temporary or permanent parenting plan, custody order, visitation order, or other *order governing* the residence of a child under this title." RCW 26.09.410(1) (emphasis added). A DVPO restricts a person's ability to have contact with someone else. And while a court may take into consideration the existence of a parenting plan in how the court chooses to restrict parents' ability to contact their children, that does not turn a DVPO into a court order that *governs the residence* of a child. This holding does not prohibit any party from properly petitioning to modify a

parenting plan based on the same underlying facts that support a DVPO. Nor does this holding prevent a trial court from considering RCW 26.09.191 limitations under its factor 4 analysis under RCW 26.09.520 in a relocation trial.

Though the trial court erred in determining applicability of the rebuttable presumption in favor of relocation based on the DVPO, the error was harmless because the rebuttable presumption would still have applied based on the permanent parenting plan where the children spent about 57 percent of the residential time with Amanda.

CONCLUSION

Although the trial court abused its discretion in precluding Joshua from introducing evidence challenging the spanking incident, the error was harmless as to the decision to grant Amanda's request to relocate the children because the spanking incident did not play a factor in that decision. Thus, we affirm the relocation order, but where neither party petitioned to modify the parenting plan, we reverse the parenting plan because the trial court abused its discretion in modifying the parenting plan beyond the limited modification allowed for pursuant to a relocation. Because we affirm the relocation, the residential schedule will remain until the trial court on remand can consider and enter a new parenting plan consistent with this opinion.

_Coburn, J._

WE CONCUR:

_Birk, J._          _Smith, C.J._

25